## Huddleston, et al. v. City of Ashland.

(Decided December 10, 1926.)

Appeal from Boyd Circuit Court.

1. Municipal Corporations—Widening Pavement is Original Construction Authorizing Assessment Against Abutting Property (Ky. Stats., Section 3096.—Widening pavement in street held to constitute original construction authorizing assessment therefor against abutting owners, under Ky. Stats., section 3096.

2. Municipal Corporations—That City was Raised from Fourth Class to Second Class Does Not Affect Right to Assess Abutting Property for Widening of Streets (Ky. Stats., Sections 3096, 3563).—That

city of fourth class was transferred to city of second class does not affect its right to assess abutting property owner for widening of pavement, under Ky. Stats., section 3096, since section 3563, relative to cities of fourth class, is in almost exact language.

3. Municipal Corporations—Cost of New Curbing on Widening Pavement is Part of Original Construction, for which Abutting Property May be Assessed (Ky. Stats., Section 3096).—Cost of new curbing after old curbing, which was in good condition, was destroyed in widening pavement in street, held to constitute part of original improvement, for which abutting property owners are assessable under Ky. Stats., section 3096.

4. Municipal Corporations—Oversight of Clerk in Copying Ordinance on Journal in Leaving Out Essential Elements of Title Held Not to Invalidate Ordinance (Ky. Stats., Sections 3063, 3100).—In view of Ky. Stats., section 3063, recognizing that ordinance is law before being recorded, oversight of clerk of board in copying ordinance on journal, in leaving essential element out of title, held not to invalidate ordinance, and council could, under section 3100, correct such error by resolution directing re-recording.

WAUGH & HOWERTON for appellants.

JOHN T. DIEDERICH and S. S. WILLIS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming on the original and reversing on the cross appeal.

Thirteenth street in the city of Ashland is 75 feet wide. In 1915 and 1916, Ashland, then being a city of the fourth class, certain parts of that street were ordered to be and were, for a width of 24 feet, practically in the center, paved with brick upon a concrete foundation, as a driveway, and at the cost of the abutting property owners. Such improvement was at the time regarded as ample for the purposes of public improvement, but between that time and 1924 there was great growth and improvement in that city, and in that portion of it adjacent to Thirteenth street. Not only so, the Midland Trail, a national highway, had in the meantime been greatly improved for many miles west of Ashland, and the fact that Thirteenth street was a link in the Midland Trail and largely used in entering and leaving Ashland, enormously increased the traffic over that street, and accordingly in 1924 the general council of the city, then a city of the second class, made provision for widening the driveway on Thirteenth street 5½ feet on each side, so as to make the driveway thereon 35 feet instead of 24

feet wide, and again provided for the making of such improvement at the cost of the abutting property owners, and providing for a lien upon such property to cover the cost.

In this equitable action by the city against certain property owners on Thirteenth street to enforce a lien for the cost of such widening, provided for in 1924, the defendants are resisting the relief sought upon three grounds: (1) That the city, having improved Thirteenth street in 1915 and 1916 at the expense of the abutting property, had no power under its charter to widen the driveway in 1924 to be paid for by the abutting property owners and charged as a lien on the abutting property; (2) That the curbing at the edges of the improvement made in 1915 and 1916 was torn away on each side when the 1924 widening of the street was done, and being then in good condition in no event should defendants be charged with the cost of a new curbing upon the outside of the driveway after it was so widened; and (3) that the 1924 ordinance providing for the widening was void because its title under the provisions of the charter was insufficient to authorize any improvement of Thirteenth street.

Section 3096, Ky. Stats., being a part of the charter for cities of the second class, provides:

"The general council may, by ordinance, provide for the improvement of the streets, alleys and other public ways and sidewalks (including curbing and guttering) or parts thereof in the manner herein set out. The improvement of any public way or sidewalk by original or resconstruction or by resurfacing upon a foundation already in place, shall be deemed an improvement within the provisions of this act. . . .

"The improvement of public ways and sidewalks (including curbing and guttering), except as hereinafter provided, shall be made at the exclusive cost of the owners of real estate abutting on such improvement. . . .

"Any street, alley or other public way which has been improved or reconstructed with brick, granite, asphalt, concrete, or other improved material or paving, since March 1, 1909, or which may hereafter be improved or reconstructed with brick, granite,

asphalt, concrete or other improved material for paving, entirely at the expense of the abutting property owner, as provided herein, shall thereafter be kept in repair, maintained, reconstructed and improved if and whenever it may be necessary to reconstruct or improve the same entirely at the expense of the city.''

The first question under this charter provision appears to be whether a municipality in which there is a wide and commodious street may make provision for its original improvement in such way as to erect in the center of it a driveway of the materials mentioned in the statute of such width only as will serve for present purposes, all at the cost of the abutting property owners, will thereafter be precluded from widening the original narrow improvement when conditions justify it, also at the expense of the abutting property. That is whether the erection of a narrow driveway in a wide street at the expense of the abutting property owners exhausts the power of the municipal authorities so as to thereafter prevent them, under changed conditions, from providing at their cost the widening of the driveway to cover a larger area within the street. If the widening of the driveway is original construction the power is conceded, but if the addition to the width of the driveway is only reconstruction of the original,. then under the charter provision quoted there was no right to assess its cost against the abutting property.

It will doubtless be conceded that the city might in the first place have provided at the cost of the abutting property owners a driveway covering any or all parts of the street, or that it might have in its discretion provided for a narrower driveway than the one erected in 1915 and 1916. This being true it is difficult to understand how the city could be deprived under the language of the charter of the power to provide for the improvement of the whole or any part of the street, at the expense of the property owners because it had theretofore provided only for a partial improvement at their expense. The very first provision quoted not only confers the power to improve the streets and public ways—meaning necessarily all of them—but evidently had in contemplation that the whole of a street might not sometimes be so improved at one time, for it uses the words ''or parts

thereof," doubtless having in mind that a part of the
street might be improved at one time at the expense of
the abutting property onwers, and a part at another.

The history of Ashland furnishes an excellent reason
for the incorporation of that idea into the charter. Evi-
dently the city was originally laid out upon an ambitious
plan, for the streets were made wide and commodious, in-
dicating the belief of its promoters that it had a greater
future, and would require more commodious streets than
an ordinary country town, and this record discloses that
this conception of its promoters was not wholly an idle
dream, for it is shown that between 1916 and 1924 there
had been very unusual growth and large increase of pop-
ulation, and that the traffic upon this particular street
was such as demanded the material widening of the brick
driveway.

The authority expressly conferred by the charter to
improve the streets and other public ways at the ex-
clusive cost of the owners of abutting real estate ob-
viously confers the power to improve the whole of the
street at their cost, if deemed advisable by the general
council, and the insertion in that grant of power or
authority to improve "parts thereof" clearly contem-
plates that the improvement may be made, in the discre-
tion of the general council, of a part of the street at the
cost of abutting property owners, without impairing its
right thereafter to provide in the same way for the im-
provement of another part.

The provisions of the charter of cities of the fourth
class to which Ashland belonged in 1915 and 1916 are in
almost if not the exact language of the charter in ques-
tion, so that there is no complication arising out of the
transfer of that city from one class to another. Ky.
Stats., section 3563.

While we have in this state no decision bearing di-
rectly upon the point, this interpretation of the charter
is in harmony with many opinions of this court upon sim-
ilar questions. It is true that in the city of Louisville v.
Tyler, 111 Ky. 588, it was, in substance, held that under
a city charter which only provided for the assessment
against abutting property of the cost of original con-
struction, such property could not be charged with the
cost of reconstruction, although the original construction
had not been made under an ordinance or at the cost of
the abutting property owners, thereby holding in effect

that, although there had been no original construction by the municipal authorities in the first place, the effort thereafter to charge the property with such construction was reconstruction. That case, however, was disapproved in Catlettsburg v. Self, 115 Ky. 669, and expressly overruled in city of Louisville v. Stoll, 159 Ky. 138, wherein the rule is laid down that until the abutting property has been once compelled to bear the burden of original construction there had been no such construction. Likewise in Sparks v. Barber Asphalt Paving Co., 129 Ky. 769, it is held, "until the street is improved as provided by the municipal authorities, and an improvement is made for which the property owners are charged, there is no original construction of the street; in other words, the abutting property may be taxed to construct the street, and this power of taxation is not affected until it is exercised. . . . The rule declared by the court rests upon the ground that until the abutting property has once been compelled to bear the burden the city has not constructed originally the street."

In city of Covington v. Bullock, 126 Ky. 236, this court adopted Webster's definition of reconstruction as follows: "To construct again, to rebuild," and held that only when an entire street is torn up and rebuilt is there reconstruction.

The cases of Carran v. Ludlow, 174 Ky. 529, and McCoy v. Carran, 179 Ky. 590, do not raise the question here presented. In those cases it was only held that although the street for a part of its width had previously been constructed at the cost of the city, this did not prevent its original construction therafter at the cost of the abutting property.

Clearly under these authorities the work in question was not a reconstruction; there was nothing torn away except the curbings on each side erected in 1916 were necessarily removed in widening the street. That part of the street so constructed in 1924 was neither repaired, reconstructed nor re-established as a brick highway, but was an original construction upon that part of the street which had never theretofore been constructed under municipal authority.

Giving, therefore, to the charter what we conceive to be a reasonable and sound interpretation, it appears to be that no part of a city street has been originally constructed until that particular part has been in the manner

set forth in the charter constructed under municipal authority; and that, when a city shall have constructed a driveway along only a part of the street its subsequent action in providing for a widening of such driveway is not a reconstruction of the original work but an original construction of that part of the work so last provided for.

It is apparent, therefore, that the chancellor below properly sustained a demurrer to this defense so interposed by defendants and held their property liable to the assessment for such widening.

But the chancellor, having some conception of the equities of the case not based upon an interpretation of the charter, overruled a demurrer to that paragraph of the defendant's answer wherein they sought to be relieved from the cost of the curbing made necessary by the new work. It is stipulated that the curbing on each side of the old improvement was in good repair, but plainly it was necessary in erecting the new part of the driveway to remove these curbings, for otherwise they would have on each side constituted in some measure an obstruction of the driveway. And when, therefore, it became necessary to remove these good curbings to that end that a necessary public improvement might be made, it followed that at the outer edge of the new improvement on each side new curbings were imperative.

We have already held that this addition to the driveway was original construction, the cost of which might be assessed against the abutting property, and that seems to necessarily embrace under the terms of the charter the right to erect new curbings on the outer edge of that improvement. If this new work was original improvement under the terms of the charter the curbing thereon is necessarily original improvement for the cost of curbing is by the charter inevitably embraced in the cost of the original construction. It may appear to be, and possibly is, a hardship upon the abutting property owners to have to pay for a new curbing when there is one already paid for by them in good condition; but such improvements are authorized in the light of the public good, and if in the carrying out of such policy an individual is incidentally done an injustice, it must be deemed only an incident to the carrying out of the improvement for the good of the municipality as a whole.

We are of opinion that under the charter the cost of the curbing cannot be separated from the rest of this

original improvement, and that therefore the trial court erred in overruling a demurrer to that paragaph of defendants' answer. Wyatt v. Louisville, 206 Ky. 432.

Nor can we assent to the proposition that because the clerk of one of the municipal legislative bodies in copying the ordinance of 1924 providing for the widening of the street left out of the journal of that board a part of the title to the act so as that it did not show it contemplated an improvement of Thirteenth street, the whole ordinance was void. There was no defect in the title to the ordinance itself, but the clerk of one of the boards in copying it on the journal left out of the title to the ordinance several essential things, among them being that part of the title having reference to the improvement of Thirteenth street. But the title to the ordinance as passed by both boards of the general council was in all respects sufficient as to Thirteenth street, and the ordinance as published and as recorded in the other board, and as registered with the auditor and certified by the clerk, contained a sufficient title.

Obviously the mere oversight of an administrative official in failing to properly copy the title to an ordinance upon the journal of that body could not affect the validity of the ordinance itself, for it was the ordinance itself that became the law, and it was not the thing inscribed on the journal that became the valid ordinance; and this is apparent from the express provision of section 3063, a part of the charter for second class cities, where it provides in terms:

"that no ordinance shall be recorded until it shall have become a law."

In other words, the charter distinctly recognizes that an ordinance properly passed, is the law before it is ever recorded.

That being true, the general council, after the discovery of the faulty recordation, had the power to, as it did, pass a resolution directing the re-recordation of the original ordinance which was done pending this suit.

This was not an error in the proceedings of the general council, but was merely an administrative oversight by a clerical official, and the council had the power under the broad provisions of section 3100 of the charter to correct this administrative error. It was not, as

counsel for appellant seem to assume, an effort by the general council after suit was brought to correct a void ordinance, but was in truth merely such action as required one of the council's administrative officials to do correctly that which he had theretofore incorrectly done.

The judgment is affirmed on the original appeal, but is reversed on the cross-appeal, because of the error of the court in overruling the demurrer to the second paragraph of defendants' answer, with directions to sustain the demurrur to the same and enter judgment accordingly.