## W. T. Congleton & Co. v. Roberts, et al.

(Decided October 21, 1927.)

(Rehearing Denied, with Modification, December 2, 1927.)

### Appeal from Fayette Circuit Court.

1. Dedication.—"Dedication" means a devotion of land to some public use, including use for a public road, street, or highway.

2. Dedication.—Dedication may be expressly made, as by recorded deed or plat, or impliedly by acts and conduct, as by opening land in such manner as to invite public to use it as highway.

3. Dedication.—Whether dedication of land to public use is made expressly or by acts and conduct, intention to dedicate it must be clearly evidenced.

4. Dedication.—If owner of land offers to dedicate it to a public use and the public accepts, the dedication becomes complete then, and cannot thereafter be revoked either by the dedicator or by his privies in estate.

5. Dedication.—Offer to dedicate land to public use may be accepted either by members of the public appropriating the land to uses for which it was offered or by public authorities exercising control over it by maintaining and repairing it.

6. Dedication.—Whether dedication of land to public use is accepted by members of public using land for intended purposes, or by public authorities exercising control over it by maintaining and repairing it, it is not essential to the acceptance that the use or maintenance continue for the statutory period necessary to acquire title by adverse possession.

7. **Dedication.**—In equity action, evidence held to show dedication for street purposes of 6-foot strip of land, which had been used by public and maintained by public authorities, though not actually surfaced as part of highway, by reason of offer of owner to dedicate land and acceptance by public.

BAILEY D. BERRY and W. T. SMITH for appellants.

WILSON & HARBISON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

By undisputedly valid steps and proceedings the legislative department of the city of Lexington ordered the improvement of South Ashland avenue, which runs north and south connecting Euclid and Alford avenues, both of which run east and west. At the letting W. T. Congleton & Co. (to whom we shall hereafter refer as plaintiffs) secured the contract for the specified improvement, all of which was ordered at the expense of the abutting property owners. After the improvement was finished and accepted by the city, estimates were made against the various abutting property owners, two of whom were W. G. Roberts and his wife, Bettie F. Roberts (to whom we shall hereafteer refer as defendants), who jointly owned a lot upon which they resided and located at the southeast corner of Euclid avenue, and the improved street. The estimated portion of the total cost of the improvement due from defendants as abutting owners was $530.56, which they refused to pay, and this equity action was instituted against them by plaintiffs to enforce the statutory lien against their lot for that amount. The substance of the defense was that dedendants' lot did not abut the improved street, but that there was a strip of land 6 feet wide separating it from the street, the title to which was in others, although the facts were that such alleged 6-foot strip was in the open street improved by plaintiffs up to the line of the walk in front of defendants' lot, and it was therefore out in and a part of the street, and has continuoutly been so from the time the opening of the street was first made. Appropriate pleadings made the issues and the cause was referred to the master commissioner to take proof and report the facts thereon.

The territory involved was outside of the city limits of Lexington prior to 1914, when, by proper procedure, it was annexed to the city. Some time prior to 1900, and

while the property was outside of the city limits, the Fidelity Trust & Safety Vault Company of Louisville purchased a plot of ground, including defendants' lot and the improved street, and it made a plat of the land it purchased and filed it for record in the Fayette county court clerk's office. On the 2d day of April, 1900, it sold to Mrs. Sue Hinton lot No. 7 on that plat, containing 15 acres, and on March 1, 1901, it sold to L. B. Shouse lot No. 8, containing 9 acres. The beginning point of lot No. 7 was at the southeast corner of Euclid avenue and Ashland avenue and on the west line of lot No. 8. The plat filed by the Fidelity Trust & Safety Vault Company did not show the continuation of a roadway or street south from Euclid avenue, but following the annexation of the property by the city of Lexington, the space for the street (which was opened before the Hinton purchase), if continued south from Euclid avenue, was designated and known as South Ashland avenue, and which is the improved street here involved. In 1906 Mrs. Hinton conveyed lot No. 7 to a corporation formed by herself and husband and known as the South Ashland Land Company. It subsequently platted lot No. 7, and filed it in the county clerk's office on March 23, 1907, and upon which was shown South Ashland avenue located as above described; but there also appeared on the plat a reserve of a 6-foot strip bordering on the west line of lot No. 8 and on the east side of South Ashland avenue as shown thereon, and on September 7, 1917, the South Ashland Land Company conveyed that strip to Paulena Marshall by deed duly executed, and defendants rely upon her title to that reserved strip in defense of this action.

The commissioner in his painstaking and excellent report recites the above facts concerning the transmission of titles and also discussed the oral testimony taken by him. From it he concluded and reported that the 6-foot strip was dedicated to the public as a part and parcel of South Ashland avenue before the sale to Hinton, and that such dedication was accepted by the public, and that the dedicator and all of his privies in interest were bound by that dedication and acceptance, and from such findings of fact he recommended a judgment in favor of plaintiffs in accordance with the prayer of the petition. Defendants filed exceptions to that report, and upon their hearing before the learned circuit judge they were sustained, and plaintiffs' petition was dismissed, and to reverse that judgment they prosecute this appeal.

The proof taken by the master commissioner shows beyond controversy that, prior to the execution of the Hinton deed by the Fidelity Trust & Safety Vault Company, the space now covered by the improved South Ashland avenue (and which, as we have seen, included the 6-foot strip on the east side thereof and lying next to defendants' lot) was fenced on either side and used by the public as a road or highway, and that the county authorities did some necessary repair work thereon to keep the traveled way of that space in reasonable condition, such traveled way being near the center between the two fences on either side, they being 66 feet apart, thus making the open space the same width as that portion of Ashland avenue running north from Euclid avenue. It was in that condition before Mrs. Hinton obtained her deed, but just who opened and fenced that space in the manner indicated the testimony does not disclose. The fence on the east side of the space was on the line between lots 7 and 8, supra, thus leaving the 6-foot strip out in and as a part of the space, and which, in turn, as we have said, was used by the public as a street or highway. It was in that condition at the time and long before the filing of the plat by the South Ashland Land Company, and also at the time of the conveyance by it to Paulena Marshall.

Whatever other questions may be presented by the record, it is sufficient to say that, if the owners of the ground whereon South Ashland avenue was improved legally dedicated it to public use, and that dedication was legally accepted, it could not thereafter be revoked as against the public by the dedicator or by any one in privity with him. 18 C. J. 72, par. 67. And so it becomes necessary to determine whether such dedication was made in this case, and, if so, whether it was properly accepted.

Dedication, as used in this connection, means a devotion of land to some public use including an easement for a public road, street, or highway. It may be expressly made, or it may be made by acts and conduct, but in either case there must be a clear evidencing of the intention of the dedicator to offer the easement to the public. 18 C. J. 52, par. 33. Express dedications are usually made by recorded deed or plat, while implied ones arise from acts and conduct. See 1 Caldwell's Ky. Law Dictionary, p. 875. A very common method of an implied dedication is the opening of land in such a

manner as to invite the public to use it as a road, street, or highway. Corpus Juris, supra, p. 53, par. 34, and page 57, par. 41. There is no legally prescribed list of acts, or of conduct, on the part of the landowner certainly indicating an intention to dedicate, but a most frequent one is the fencing off of a space appropriate for a street or highway and throwing it open to the use of the public. Each case must depend upon its own facts, and, when the particularly proven facts are sufficient to indicate an intention on the part of the landowner to make the dedication and to show an acceptance of it by the public, then the dedication becomes complete, and cannot, as we have seen, be thereafter revoked by the dedicator or his privies in estate.

A case from this court involving almost analogous facts in Trustees of Princeton College v. Board of Trustees of Princeton, an opinion written by Judge Lindsay and reported in 7 Ky. Op. 121. It is true that the use of the dedicated property to the public was, perhaps, more extensive and of longer duration in that case than is true in the instant one; but neither that case nor the authorities generally attach all importance or confine the acceptance to either the extensiveness of the public use or its duration in arriving at the fact of acceptance. If the property is so surrounded and located in a sparsely settled community, a much more limited use by the members of the public would be sufficient to create an acceptance than if it was located in a more thickly settled community and traveled much more extensively. 8 R. C. L., p. 900, par. 25. The authorities are also to the effect that an offered dedication to the public may be accepted by either the members of the public appropriating the offered property to the uses for which it was made, or by the public authorities exercising control over it by maintaining and repairing it. Whenever the dedication is accepted by either of those methods, it is not essential that the use be continued for the statutory period necessary to acquire the right by adverse possession. 18 C. J. 40; Trustees of Princeton College case, supra; and Beall v. Clore, 6 Bush 677. The latter method of acquiring the easement is designated in the law as an acquisition by prescription, and which may be, and most frequently is, done against the consent or the will of the owner, and by which he involuntarily parts with his title. When, however, his consent and will to make a dedication is clearly manifested by his acts, the dedication becomes complete when

the acceptance is made. With these preliminary statements of the law, and which will be found to be correct from the authorities supra, and others, including opinions and standard textwriters, the only remaining question is: Was there a dedication and acceptance of South Ashland avenue in this case so as to make the 6-foot strip in controversy a part of the ground covered by South Ashland avenue?

It is clearly shown that before the execution of the Hinton deed the grantor therein, or some predecessor in title laid off the identical space now improved as South Ashland avenue by fencing it on either side and making it the same width as was the same street north from that point. Deeds were executed calling for the line of Ashland avenue, *if extended,* and some of them did not use the qualifying words "if extended." The proof with equal clearness also shows that the public, at least to a limited extent and corresponding with the sparsely settled community, immediately began to use that space as a traveled way, and before it was taken into the city maintenance work was done upon it by the county authorities of Fayette county. The same conditions and use continued after the territory was annexed to the city and some or all of the entire space, including, as we have said, the 6-foot strip, was actually improved by the city to recover for a portion of the cost of which this action was instituted. No one knew of the existence of the strip, except those who reserved it, until a short while before the improvement here involved was made, and that information seems to have been confined alone to the defendants. Under such facts and in the light of the law supra, we are constrained to hold that the commissioner was correct in his finding of fact, as well as of law, and that the trial court erred in sustaining the exceptions filed thereto.

The fact, if it be one, and as is so contended by defendants, that the strip was not actually surfaced as a part of the improved driveway, creates no material difference in the legal rights of the parties. The city, as was pointed out in the case of Huddleston v. City of Ashland, 217 Ky. 452, 289 S. W. 1091, had the right to improve as a driveway such portions of the street as it saw proper, and if, under its discretion in that regard, it left the strip for sidewalk space or for a grass plot, it could not avail defendants. The vital fact is, whether the strip became a part of the space occupied by the street by the

dedication and acceptance hereinbefore discussed, and not whether the city undertook to or did improve such entire space.

Wherefore the judgment is reversed with directions to set it aside and to overrule the exceptions and to enter judgment as prayed for in the petition.