## Lawson v. Campbell et al.

Jan. 30, 1945.

J. P. Chenault and H. D. Parrish for appellant.

E. C. McDougle for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appeal from a judgment denying injunction sougnt by appellant, plaintiff below, against appellees to require them to remove obstructions across what appellant insists is a passway, the use of which he has acquired under the following circumstances:

Appellant owns an 80 acre tract of land in Madison County, upon which he resided for many years. It lies in the southern part of the County near Paint.Lick, some distance from the Paint Lick pike. Appellees are joint owners of a 40 acre farm immediately adjoining Lawson's tract between his land and the highway. Appellees purchased this tract from Hulett and wife in March of 1942, the deed including the right of way strip. Immediately adjoining the Campbell land lie tracts owned by Mrs. Goodrich, Willie Rhodus and Henry Creech, all between the Campbell tract and the highway.

Prior to 1934 the L. & N. operated a branch from Richmond to Lancaster. The right of way ran through the lands of Lawson, Hulett (now Campbell) and abutted the Goodrich, Creech and Rhodus tracts to a point near the highway, varying in width from 33 to 66 feet. Following abandonment the railroad company conveyed the strip to all the land owners. Hulett obtained his deed in June, 1934, the width of his tract varying from 33 to 66 feet for a distance of about 1700 feet to the Creech and Goodrich lines.

Prior to the conveyances various owners (including appellant) who lived quite a distance eastwardly of the highway, Hulett and perhaps Mrs. Goodrich, used the Camp Branch road leading from a point north of Lawson's land, following the general direction westwardly to the highway. This roadway followed the branch and at points ran in the bed of the small stream; it was rough and difficult of travel; at times of heavy rains it was impossible to walk the road or to pass over it with vehicles. From the description in proof it was what one might call the ordinary country branch road, and it was shown that following rains Lawson, his neighbors, and their children in going to school, walked the railroad tracks.

Soon after the conveyance Hulett and Lawson saw an opportunity to make a decided improvement of con-

ditions. The two took up the matter with Mrs. Goodrich, Creech and Rhodus. The negotiations readily led to the execution of two contracts dated September 4, 1934. In one contract Mrs. Goodrich was named as first party; in the other Rhodus was first party, and in each Lawson and Hulett were the second parties. Each recited the acquisition of the first and all parties to the right of way strip. It was then written in the Goodrich contract:

"Whereas the parties of the second part desire that said right of way be converted into a public road for the use of those whose farms lie beyond and adjoin the right of way, and for the above consideration the party of the first part contracts that the said land purchased from the railroad company may now and forever be used as such road with neither first nor second parties having any right to terminate this contract as long as same is used for public roadway, neither have either of them any right to deny any neighbor or the general public the free use of such roadway."

The Rhodus contract was of the same tenor, closing with these words: "Being more explicit the land purchased by Willie Rhodus and known as the L. & N. right of way is now to be converted into a road for use of the land owners along this right of way and for the general public, and the road once established it is agreed by the contracting parties that it shall so continue with neither party having any power whatsoever to terminate this contract." Creech did not sign any writing, but for a consideration consented to the plan.

Following the agreements Hulett and Lawson, Mrs. Goodrich, Rhodus and Creech moved their fences from the original right of way lines inwardly so as to enclose a strip about 20 feet in width, and thereafter the new passway was used by Lawson and some of his neighbors and all the parties including Hulett, until September 1943, when appellees built two fences across the strip, one near appellant's west line, the other nearer the Creech or Goodrich lines further west. Some of appellant's family removed one of barriers, and appellee notified Lawson and members of his family to cease further trespass upon his land.

Upon Lawson's pleadings setting up the facts as substantially stated, asking for temporary and permanent mandatory and inhibitory orders, upon oral hearing

of proof the chancellor overruled the motion for temporary injunction. The record shows that following the court's order a member of this court, upon application, directed temporary injunction pending filing of appeal. After the case was heard the chancellor denied permanent injunction, and dissolved the order granting temporary injunction. When appeal was filed this court sustained appellant's motion to restrain defendants pending appeal. The case is now here on merits upon oral proof heard on the preliminary motions, and depositions taken later.

Appellant bases his right of reversal on two grounds: (1) That the passway was in use when appellees purchased in 1942, and had been in such use since 1935, and that it was notoriously obvious to appellees when they purchased, hence they took the property subject to any incumbrance theretofore placed upon it. Citing Kentucky Harlan Coal Co. v. Harlan Gas Coal Co., 245 Ky. 234, 53 S. W. 2d 538; Casey v. Hensley, 245 Ky. 308, 53 S. W. 2d 698; Wright v. Willis, 63 S. W. 991, 23 Ky. Law Rep. 565. The second contention is that the proof amply shows that Hulett, grantor of appellees, and all parties, intended to and did dedicate their portions of the road bed to use by their neighbors and the public. Citing Terrell v. Hart, 90 S. W. 953, 28 Ky. Law Rep. 901; W. T. Congleton & Co., v. Roberts &c., 221 Ky. 712, 299 S. W. 579; Burnett v. Henderson, 238, Ky. 431, 37 S. W. 2d 262. Appellee briefs the case solely on the second proposition, contending that appellant's pleading pitches his case on that phase alone. As we read the petition, Lawson properly raises the first question, and we fail to find answer in the record.

While there was a mass of proof taken by oral testimony and depositions, reference to only portions is necessary. If it be relevant to the issue, appellee insisting that it is not so, the proof clearly shows that all parties concerned, including Hulett, considered the old branch road inadequate, and following the abandonment of the railroad hastily grasped the opportunity to improve materially the situation, both he and Lawson apparently treating the proposed roadway as one of necessity.

We do not find it necessary to enter into discussion of whether or not these transactions and actions of the parties resulted in a dedication to the public use. The

contracts show such intention, though Hulett, who makes an unsatisfactory witness, says when he signed the contracts it did not enter his mind that such was to be the purpose. We are sure that the actions of the parties at the time of the contract is indicative of more than a purpose to grant a mere permissive use which could be abrogated at any time, absent the passage of time which would have perfected rights by prescription.

That appellees knew of some sort of servitude when and before they purchased there can be no doubt. In the first place they could readily observe the traveled road bed, and as well that parties, including Hulett, had moved fences so as to enclose a strip 20 feet in width; that both appellees knew of an existing servitude is shown by their proof as well as Hulett's. Charlie Campbell was asked if he had any information that there was a road over the right of way that could not be closed. He answered, "I told Mr. Hulett when we were trying to buy the place if it couldn't be closed we didn't want it." Fred was asked: "When you bought this property did you have any talk about the use of the abandoned right of way as a road, with anyone? Ans. Yes, I asked if Mr. Lawson had any writings to show that he had a right to travel over that road and Mr. Hulett said that he didn't have no writing to the road. I also asked him if the road could be closed, and he said he reckoned it could, and I told him that if it couldn't be closed that I didn't want the place." The transcript does not show that either made any inquiry of appellant, or other parties along the road. Hulett, who had made occasional use of the passway through Lawson's farm, and constant use to the highway, says that he joined Lawson in establishing a new road out of his properties to the highway. Asked, "At the time you sold the property to Mr. Campbell did he know that the road was being used by Mr. Lawson, yourself and the public in general having occasion to go to your property along there?" he replied, "Yes, sir, he knew it was a road," and was being worn by automobiles, traffic of all kinds, with alternate fills and cuts. He said Campbell asked him if it was a "deeded road," and Hulett told him that "we had contracts bought out down there; no contracts between us, only me and them;" that Campbell expressed no intimation that he expected to close the road. Hulett did not recall that either of the Campbells had said they would not buy unless they could close the road, "they asked

me if it was a private or a public road and I told them private.''

It might be, if the necessity existed to hold here, that notwithstanding Hulett's effort to hedge on the agreement with Lawson, and notwithstanding there had been no acceptance by some public official of the roadway for the use of the public, that it was the clear intention of the parties that the roadway should be used by the public. Two things were certain in the minds of Hulett and Lawson; that as far as they were concerned the proposed road was a way of necessity, and that the old right of way was to be used as a continuous roadway, without the right of any of the parties to abrogate the agreement. It is indisputable that appellees knew of and observed the servitude. This being so they cannot now claim any superior right to so much of the roadway as Hulett fenced in for road purposes. The authorities are clear on that, as well as the point that they should have pursued their inquiry as to the nature of the passway from one whom they knew was claiming the right. The facts here are similar to those in Wright v. Willis, 63 S. W. 991, 23 Ky. Law Rep. 565, wherein we held that the purchaser of land through which an old roadway ran, with notice of the fact that the user of the road was claiming the use as a matter of right, should have inquired of the user rather than relying upon what his grantor told him. In Bently v. Hampton, 91 S. W. 266, 28 Ky. Law Rep. 1083, we held that the purchaser of land over which there existed a roadway which was in visible use at the time of purchase, takes the land subject to the easement of a right of way. One who purchases land over which there is a clearly marked passway is charged with notice of the easement. Sparks v. Rogers, 97 S. W. 11, 29 Ky. Law Rep. 1170; Schwer v. Martin, 97 S. W. 12, 29 Ky. Law Rep. 1221, 7 L. R. A., N. S., 614; Jones v. Jones, 101 S. W. 980, 31 Ky. Law Rep. 183; Burke v. Trabue's extx., &c., 157 Ky. 580, 126 S. W. 125; Riddle v. Jones, 191 Ky. 763, 231 S. W. 503. In Casey v. Hensley, 245 Ky. 308, 53 S. W. 2d 698, we held that a purchaser took property subject to whatever incumbrances were placed thereupon by obvious and known passway in favor of adjoining land owners, unaffected by statements of third persons. Barnett v. Morrison, 12 Ky. 73, 2 Litt. 73; Burress v. Barbee, 33 S. W. 412, 17 Ky. Law Rep. 1031.

Appellees undertook to close this roadway under the impression they had gained from Hulett that the passway was only permissive, a matter which Hulett in his hedging testimony thought he was conveying to them. The only reason given for the closing of the roadway by appellees was stated in a conversation with Lawson, in which they said they were going to build a road from one side of their tract to a barn on the other side. But as showing some ill feeling, one of the appellees on motion for temporary injunction said, referring to some members of Lawson's family: "They done mighty nice the first year, but later the boys would drive 40 and 50 miles up the road and kill our chickens," though he says he had told Lawson he was going to close the road "before the time run out." Neither the purpose nor objection gave him grounds for closing the road which he knew existed and being used by Lawson and others under the right which he made little effort to determine. The equity, justice and law of the case seems to us to be on the side of the appellant.

The judgment is reversed with directions to set aside orders heretofore made denying relief, and enter one granting injunction as prayed in the petition.

Whole Court sitting.