### Lambert et al. v. Huntsman.

March 16, 1948.

Robert M. Coleman, Judge.

N. F. Harper for appellants.

W. D. Gilliam for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This is a suit by appellants to enjoin appellee from interfering with the use of a private passway over land belonging to the appellee and to have appellants adjudged to have an easement over and along said passway. From an order denying the injunction and dismissing the petition, appellants prosecute this appeal.

Filed as an exhibit with appellee's testimony is a diagram or plat showing the location of the private passway involved and its relation to appellants' property and the surrounding buildings, open spaces and alleys. With this plat to use in connection with the testimony of the parties, the situation involved in the case becomes clear and easily understood. Without it, it is almost impossible to convey any idea to a reader of this opinion of the situation as it exists and, therefore, no extensive description of the layout will be attempted. It is sufficient to say that appellants own a lot 22 feet wide by 103 feet deep facing on the public square in the town of Scottsville. On the front 2/3 of this lot is a building in which appellants operate a combined pool and lunch room for which they receive large quantities of soft drinks and other supplies, which they customarily receive in the rear of the building, and part of which

is stored in the basement. The rear 1/3 of this lot is vacant property, not occupied by any building. Appellants acquired title to this property September 1, 1941, from G. W. Weaver who had acquired title from H. E. Dixon on May 29, 1929, Dixon having acquired title on August 7, 1919. Immediately north of appellants' lot is an open, vacant lot extending from appellants' property to a public alley some 80 or 90 feet north of appellants' lot. This vacant lot, which appears from the unscaled plat to be approximately 25 feet wide, is owned by N. S. Guy, who also owns a residence and a store building which abut it on the east and west respectively to the extent of its northern 78 feet. The other 22 feet of this vacant lot is abutted on the east by a building occupied by a pressing shop, immediately north of appellants' property, and is abutted on the west by a vacant lot, including the passway involved here, on the northern edge thereof, belonging to appellee. It is, therefore, very clear from the plat and proof, if it is not from this description, that the passway in question has no direct connection with appellants' lot and does not touch it anywhere. It begins at Cemetery Street and ends in Guy's vacant lot, above referred to, about 22 feet north of appellants' property. To go to and from said passway from the rear of appellants' lot, it is necessary to travel over the southern 22 feet of N. S. Guy's vacant lot.

The passway in question covers the northern 12 to 15 feet (width not definitely shown) of a tract of 80 feet by 90 feet at the northeast corner of North Cemetery Street and West Main Street in Scottsville, title to which was acquired by appellee by deed from N. S. Guy, dated February 9, 1910. On the southern 46 feet of this lot is a warehouse belonging to appellee; the northern 44 feet is a vacant lot, the passway in question being the northern 12 to 15 feet of this vacant lot. Adjoining. this warehouse on the east is a store. building 103 feet by 46 feet at the northwest corner of West Main Street and the public square. This store building, the adjacent warehouse on the west and the vacant lot on the north of the warehouse were used by appellee for his hardware and implement business under the name of the Farmers' Supply Company. The store building is now occupied by the National Farm Store, a corpora-

tion of Nashville, Tenn. This company also has a lease on the warehouse and the vacant lot immediately north of it, which includes the passway, for a period of ten years with the right of renewal for another ten years. Under the lease, the lessee has the right to tear down the old warehouse and erect a new one for use in its business. The new warehouse is to cover the entire lot, including the passway, if lessee so desires, and is to cost approximately $15,000.00. At the expiration of the lease, the building is to belong to the lessor. It was the proposed building of this warehouse by the lessee of appellee, with its probable covering and enclosing of the passway in question, that caused appellants to bring this suit to enjoin appellee against the proposed closing.

## The Proof

It would unduly lengthen this opinion to analyze all the testimony in this case but we think it is fairly established that the passway in question was opened up by appellee for his own use in connection with his hardware and implement business and for use of his customers in getting into the vacant lot adjacent to his warehouse for the purpose of loading wire fencing, farm implements, etc.; that permissive use of the passway was granted on two separate occasions by appellant, once to H. E. Dixon, predecessor in title of appellant, who asked for and was given permission to use this passway to haul certain materials for the repair of his building on the lot now owned by appellant. In return for this use, he agreed to and did place some gravel on the passway to make it usable. This was some 20 years or more ago. The other instance was when permission was granted to WPA some 10 or 12 years ago to use this passway for hauling materials over it to its storage place on the vacant lots of appellee, N. S. Guy and others. The WPA improved the entrance of the passway from Cemetery Street and put gravel on it to make it passable, since which time it has not been improved. That the passway has been used by appellants without permission of appellee since they bought the business in 1939, and the building in 1941; that it was used occasionally by different persons, whose places of business faced on public square, for bringing in coal or other heavy materials; that some of these materials were brought in the alley, which runs to the north of this

property from North Court Street to Cemetery Street, and then brought down over the vacant lot of N. S. Guy, above referred to; that the driveway herein involved was used intermittently by various tenants who lived in the N. S. Guy residence immediately north of this passway; that all these usages, except H. E. Dixon and the WPA above referred to, were without permission and often without the knowledge of appellee and none of them were with any claim of right thereto by the various users nor were such claims brought home to appellee.

### Law of the Case

The principles of law with reference to the acquisition of a prescriptive right of passway over the land of another by long continued usage are well settled in this state by the many decisions of this court involving such easements. The difficulty is in applying the law to the facts in the particular case. These principles were well set out in a leading case which came to this court from the same county, Allen, as does the case at bar and in which the attorneys were the same as in the present case. That case is Smith v. Oliver, 189 Ky. 214, 224 S. W. 683, 684, in which Judge Thomas, speaking for the court, said:

"(1) The first proposition about which there is no conflict is that the uninterrupted, continuous, and unexplained use of the passway by the claimant thereto for a period of as much as or more than 15 years will raise a presumption that the use was under a claim of right which became absolute at the expiration of the 15 years, when the claimant would become vested with the title to the passway, which the owner of the servient estate must acknowledge and respect. (Citing cases.)

"(2) A second equally well-settled proposition, that the presumption arising from such use is not a conclusive one, but is only a rebuttable one, under and by virtue of which the owner of the servient estate may show, in a controversy involving the right to the easement, that the use of it by the claimant was in fact permissive only, in which case the use would be but the exercise of a license, which the owner of the servient estate might revoke at pleasure.

"(3) Another proposition applicable to prescriptive

acquisitions of passways is that, where the use at its inception is shown to have been permissive no length of time may ripen it into a right, unless in the meantime there has been a distinct and positive assertion of a claim of right to the easement, and which assertion is brought home to the owner of the servient estate. (Citing cases.)''

Applying these principles to the facts developed in the present case, we find that the passway in question has been used for more than 15 years as a passway by some members of the general public although appellants or their predecessors in title show no satisfactory evidence of continuous usage for a longer period than 9 years. The two principal known users of this passway, H. E. Dixon, a predecessor in title to appellant, and the WPA were permissive users and made repairs on the passway in return for and to enable them to use it. Others shown by the evidence to have used this passway, such as W. H. Gregory, a drayman, L. D. Absher, who occupied a building immediately south of appellants for 3½ years, H. J. Porter, who occupied various buildings facing on public square for 5 or 6 years, I. H. Hummer, who delivered ice, coal and other products to the rear of various stores facing on the public square, Alva Hugh, who lived in the Guy house immediately north of the passway in question for several years, all used the passway sporadically and without special permission of the appellee. It was permissive use only in the sense that it was not specifically forbidden by appellee and he made no objection to its use by others where it did not interfere with its use for his purposes. According to appellee's testimony, he opened up the passway for use in his own business and others used it sporadically without objection from him. There is a total absence of proof that there was any assertion of a claim of right to the easement by anyone using it. There is positive testimony of the appellee that no such claim or right was ever asserted by anyone. From a reading of the entire record we think the circumstances attending the use of this passway clearly demonstrate that its enjoyment by others was but a mere favor and that it was never claimed as a right; but on the contrary, it was treated as a privilege that could be withdrawn at pleasure.

## Equities of the Case

From the plat filed in the record and from the proof as a whole, it does not appear that great hardship will be worked against appellants by the closing of this passage. It is a "way of convenience" rather than a "way of necessity." There is a public alley running east and west from North Court Street to North Cemetery Street. This alley is described in the record as not being usable in its present condition from the vacant N. S. Guy lot west to Cemetery Street, but it is not closed and could be repaired for use. It is open and in general use from the N. S. Guy lot east to Court Street. There is no apparent reason from the record why appellants cannot travel north the 80 to 90 feet between their lot and this alley over the vacant lot of N. S. Guy in order to reach this alley, just as they now travel the 22 feet of the Guy lot to reach the passway of appellee which takes them out to Cemetery Street. It is possible, of course, that the open lot of N. S. Guy may be closed or built on by him or its use denied, but, if that were done, appellants would be cut off from appellants' passway also, as it is now necessary to go over 22 feet of the Guy vacant lot to reach that passway, no part of which is contiguous to appellants' lot.

On the other hand, it is shown by the record that appellee has leased the warehouse and the vacant lot over which this passway goes, to the National Farm Stores which contemplates building a large warehouse covering the entire lot, including the passway, under terms favorable to appellee as heretofore set out. Appellee's proof indicates that his benefits under this lease contract may be lost or curtailed unless he has the right to close and utilize this passway in connection with the contemplated building. While equities of a case will not be considered where they contravene established legal right, they may be given weight where legal rights are in doubt and not definitely established as in the instant case.

On the whole case we think the chancellor reached the correct decision in the present case and that the judgment should be and is hereby affirmed.

Judgment affirmed.