**Ruth Ann LOID, Appellant,**

v.

**Mary Anne KELL, Carl Kell, Margaret Gardner, Charmaine Mosby, Martha Davis, James E. Baker, Herbert Womack, Mrs. Johnnie B. Huey, Thomas Compton, Mary Smith, Mary Pletcher, Coleen Roper, and Ruth V. Sprinkle, Appellees.**

No. 90–CA–2424–MR.

Court of Appeals of Kentucky.

Aug. 21, 1992.

Discretionary Review Denied by Supreme Court Feb. 11, 1993.

James M. Frazer, Monticello, for appellant.

C. Thomas Poole, Bowling Green, for appellees.

Before GUDGEL, JOHNSON and MILLER, JJ.

JOHNSON, Judge.

This is an appeal from a judgment from Warren Circuit Court. The trial court ruled that appellees, who were individuals who had entered into a written contract for the burial of their pets, had obtained an easement in the real estate, whereby appellant, Ruth Ann Loid, was enjoined from interfering with said burial rights for a period of fifty years from the last burial agreement; and that the pet cemetery was a cemetery covered by KRS 381.697. We do not believe that the contract rights obtained by appellees constitute an easement on the real estate, nor that the pet cemetery is within the coverage of KRS 381.697; and accordingly reverse the trial court.

On August 23, 1979, Ron Ford acquired a 15.1 acre tract of land on Hunt's Lane outside Bowling Green in Warren County, Kentucky. Later, Ford obtained a special exception by the City–County Board of Adjustments allowing him to construct and operate a pet cemetery. In July 1982, a 2.1 acre portion of the original tract was set aside for the pet cemetery. The other 13

acres were subsequently sold. A number of people purchased "burial plans" from Ford, and approximately 50 pets were buried on the property. In 1987 Ruth Ann Loid purchased the property from Ford. The deed included a provision by which Loid would hold Ford "harmless from all lawful completed cemetery transactions and sales." After acquiring the 2.1 acre tract, Loid removed certain signs and other items from the land. Loid was indicted by the Warren County Grand Jury for "Desecrating Venerated Objects." The indictment was dismissed by agreed order. In the current action, the trial court held that appellees had a "valid and binding easement" on the property, and declared the property to be a cemetery subject to KRS 381.697. Loid was enjoined from interfering with appellees' use of the property, and she was directed to maintain the cemetery property. The cross-claims initially dismissed were later reinstated, and the trial court reserved the issue of whether the plaintiffs are entitled to recover damages.

Appellant claims the trial court erred in finding that the "contracts" of the appellees constituted an easement, and that in holding that the property was a cemetery subject to being maintained under KRS 381.697.

The record indicates that appellees and Ron Ford entered into agreements regarding the burial of pets in the disputed 2.1 acres. Accepting for the moment appellees' contention that the agreements constituted valid and enforceable contracts, the main issue revolves around the nature and extent of appellees' interest in the land.

■ An easement may be created by express written grant, implication, prescription or estoppel. *Grinestaff v. Grinestaff,* Ky., 318 S.W.2d 881, 884 (1958); *Holbrook v. Taylor,* Ky., 532 S.W.2d 763, 764 (1976). Clearly, appellees do not have an easement by implication nor a prescriptive easement by adverse possession. If an easement exists, then it was created either by express written grant or estoppel. A written grant consistent with the formalities of a deed is

necessary to create an express easement;[1] and the written agreements do not establish the existence of an express easement. Appellees assert only that the trial court determined that a "valid and binding easement" exists. The problem with appellee's argument is that under Kentucky law there are no "general" easements. The easement must be one of four possible types. Further, the rights created by an easement depend upon the classification of the easement. The reviewing court is not restricted by the trial court's vague description. The only way an easement could have been created was by estoppel, and the only rights that appellees can have are those derived from an easement by estoppel.

Estoppel is an equitable principle utilized to prevent one who has failed to act when he should have acted from reaping a profit to the detriment of his adversary. *Sizemore v. Bennett,* Ky., 408 S.W.2d 449, 451 (1966). This Court reaffirmed this principle in *Stewart v. Siddens,* Ky.App., 687 S.W.2d 536, 539 (1984), stating that a person is estopped from questioning the existence or effect of a contract when he has asserted its existence to his benefit or the other party's detriment. *See* 17 Am. Jur.2d *Contracts* § 9 (1964). In this instance, as between Ford and appellees, Ford should be estopped from denying the existence of a valid contract. Further, since the contract concerned a use upon the land, Ford could be estopped from denying appellees access to the land if he were still the owner. In that respect, Ford would be estopped from denying an easement. However, estoppel is an equitable principle invoked against a party. *Fordson Coal Co. v. Garrard,* 277 Ky. 218, 225, 125 S.W.2d 977 (1939). An easement by estoppel cannot run with the land. An easement by estoppel must pass based upon equitable principles to the subsequent party, in this case appellant, or it is extinguished.

The appellant took her interest in the disputed property via a deed from Ford. The deed included a provision by which appellant was to hold Ford "harmless"

from the completed cemetery transactions. The exact meaning of this phrase is unclear. However, no matter what meaning is assigned to the phrase, it has not been established that appellant induced appellees' reliance based upon the provision. Appellant's actions in agreeing to the provision did not result in any change in the underlying transaction as between appellees and Ford. Instead, it merely provided Ford with a right of recourse against appellant. Therefore, this transaction standing alone is not sufficient to enforce the equitable doctrine of easement by estoppel against appellant.

If an easement does not exist, then the next question concerns the nature of appellees' rights. Appellees at most have a license. In Kentucky, "[a]s a general rule, a license is revocable at the will of the owner of the property subject to the license." *Bob's Ready to Wear, Inc. v. Weaver,* Ky.App., 569 S.W.2d 715, 720 (1978). In *Holbrook, supra,* at 764 it was noted that a licensee can prevent a licensor from revoking a license when the licensee has, with the knowledge of the licensor, in reliance upon the continued existence of the license made valuable improvements at considerable expense. Once again, the ability to prevent revocation is a remedy applicable against a licensor who has allowed valuable improvements based upon the license. Hence, irrevocability of a license does not travel with the land upon which the license is located. It must pass, if at all, by equitable principles to the subsequent owner. In this instance, appellant was not the licensor at the creation of the license. Further, appellant was not a party to the transactions giving rise to the licensees' reliance upon the license. Finally, appellees have not erected valuable improvements in reliance upon the license. Appellant took the land free to terminate at will appellees' privilege created by the license.

The final question deals with the trial court's holding that the property was a cemetery, and subject to KRS 381.697 which provides

---

**1.** *See* KRS 371.010(6) (Statute of Frauds) and KRS 382.010—.990 (Conveyances and Encumbrances).

Every cemetery in Kentucky except private family cemeteries shall be maintained by its legal owner or owners, without respect to the individual owners of burial plots in the cemetery, in such a manner so as to keep the burial grounds or cemetery free of growth of weeds, free from accumulated debris, displaced tombstones or other signs and indication of vandalism or gross neglect.

In interpreting and applying this statute, the trial court relied on KRS 446.080(4) which requires that all non-technical words and phrases used in the Kentucky Revised Statutes be construed according to common and approved usage of language. Then, relying on a dictionary defined "cemetery" as "a place for burying the dead." In doing this the trial court committed error. The term "cemetery" as used in Chapter 381 is not ambiguous; and therefore, it was error for the trial court to use extraneous matter for construction. *Prudential Building & Loan Association v. City of Louisville,* Ky., 464 S.W.2d 625 (1971). KRS 381.697 itself refers to "family cemeteries." KRS 381.715 discusses how to bring an action based upon abandonment of unused portion of cemetery lots. The statute requires "the name of all *persons* (emphasis added) buried in the lots and the date of burial, if known." KRS 381.-715(3)(b). Further, in KRS 381.750 the section discusses "mortal remains." This language in Chapter 381 indicates that the term "cemetery" contemplates places where dead persons are buried. For the trial court to extend the definition of cemetery to include a pet cemetery is not supported by Chapter 381 and is error. It is not proper for the courts to impose upon property owners restrictions greater than those specifically provided for by statute.

For all the foregoing reasons, the judgment of the trial court is reversed, and remanded for proceeding consistent with this Opinion.

All concur.