Nelson **COLE** and Marilyn J. **Cole**, Appellants,

v.

William **GILVIN**, Shirley Gilvin, Daniel Gilvin, Michael Gilvin (Individually), Michael Gilvin, d/b/a The Gilvin Family Partnership, Appellees.

No. 2000–CA–001961–MR.

Court of Appeals of Kentucky.

Oct. 19, 2001.

---

7. *Staton, supra,* 930 S.W.2d at 398–99.

8. *Allen v. Walter,* Ky., 534 S.W.2d 453 (1976); *Yocom v. Hamilton,* Ky., 494 S.W.2d 731 (1973).

**470**

Kenneth E. Dillingham, Elkton, KY., for Appellants.

Harold M. Johns, Elkton, KY., for Appellees.

Before BARBER, DYCHE and JOHNSON, Judges.

## OPINION

JOHNSON, Judge:

Nelson Cole and his wife, Marilyn, have appealed from a final judgment of the Todd Circuit Court entered on June 12, 2000, which held that they have no legal right of way to their realty over a passway or roadway on the property owned by the Gilvins. Having concluded that the trial court properly found that the Coles had no easement and the passway was not a public road, we affirm.

In March 1986, the Coles purchased a 35 acre tract of land from the Farmers Home Administration (FHA) for $76,800.00. In April 1988, the Gilvins also acquired from the FHA for $59,000.00 a tract of land which is adjacent to the property previously purchased by the Coles. Both tracts had been part of a larger farm owned by Marion Wells and his wife since the 1940's. When Marion died in 1970, the property passed to his wife, Minnie Lee Wells, who died in 1972.

Following the death of Minnie Wells, the farm property was partitioned and divided among the Wells' three children, Polly (Wells) Collins, Christine Rager and John Henry Wells. In 1981, John Henry Wells transferred his tract of land to his grand-nephew, Todd Hurt, who was Christine Rager's grandson. In 1984, Christine Rager conveyed her tract of land to the FHA; and in 1985, Todd Hurt conveyed his tract of land to the FHA. The Coles purchased the tract previously owned by Christine Rager, and the Gilvins purchased the tract previously owned by John Henry Wells and Todd Hurt. Polly (Wells) Collins retained the 15 acre tract she inherited from her mother.

Shortly after purchasing their property, the Coles registered their property with the federal government set aside program which required them to maintain it as grassland. They also leased the property to hunters for use during hunting season. Meanwhile, William and Shirley Gilvin have not lived on their property but started building a house there in 1995 in anticipation of living there in their retirement years. Instead of attempting to use the disputed passway which also crosses Polly Collins' property, the Gilvins have constructed a new roadway connecting their property to Williams Road.

At the time the parties purchased their respective properties from the FHA, there was a one-lane passway or "roadway" linking the Coles' tract with Williams Road, a county road. The passway began with a gravel surface traversing the property of Polly Collins, which abuts Williams Road, then crossed the Gilvins' tract until it split into two paths near the boundary line of the parties' properties. At this point, one path with a gravel surface went to the house built by the Gilvins; whereas, the second path with a dirt surface went onto the Coles' property having only a vague, unclear profile covered with vegetation. Nelson Cole had used the passway for access to his property for viewing the tract before purchasing it and to mow the grass once a year as required under the set aside program. The Gilvins have placed a gravel surface on the passway from their house to Williams Road, while the Coles have done nothing to maintain or improve the passway.

In the fall of 1998, after experiencing some vandalism to their house, the Gilvins placed a locked gate across the passway that prevented the Coles from using the passway. On February 25, 1999, the Coles filed a complaint in the Todd Circuit Court alleging the existence of a prescriptive

easement and seeking a restraining order prohibiting the Gilvins from interfering with their use of the passway for ingress to and egress from their property. On May 7, 1999, the trial court conducted a hearing on the motion for a temporary injunction at which Nelson Cole and Dan Gilvin testified. At the end of the hearing, the trial judge personally viewed the properties and passway at issue. On May 20, 1999, the trial court granted the Coles a temporary injunction allowing limited use of the passway. After denying the Gilvins' motion to dismiss or amend the temporary injunction, the trial court scheduled a trial on the merits.

On May 5, 2000, the trial court conducted a bench trial at which the Coles called eleven witnesses including Nelson Cole, and the Gilvins called six witnesses including Dan Gilvin and Polly Collins. Several of the Coles' witnesses testified that the passway was used by the general public until the 1940's when Marion Wells acquired ownership of the various parcels. Thereafter, members of the Wells family used it primarily for farming operations. The Coles also offered testimony that construction of an alternative roadway would cost approximately $42,000.00 $44,000.00.[1] Nelson Cole testified that the Wells family did not require permission for the use of the passway and state and county employees allegedly placed gravel on the passway periodically. All of the witnesses testified that no gate was placed on the passway until the Gilvins did so in 1998.

The Gilvins offered evidence from six witnesses including Polly Collins, and Shirley and Dan Gilvin. Polly Collins testified that the passway was created and available for the benefit of the Wells family. She stated the passway was not used by the general public, but rather was used to assist in farming operations. Collins testified that during the period of her ownership since 1974, neither she nor any government officials attempted to maintain the passway. William Harris, a land surveyor, stated that based on his research the passway has never been adopted or noted on any official map as a public road. Another witness testified that an alternative roadway to the Cole property could be constructed for approximately $6,000.00. There also was evidence that none of the deeds involving either the Cole or Gilvin property reserved an easement or right to use the disputed passway.

On June 12, 2000, the trial court entered an extensive 17–page final judgment containing findings of fact and conclusions of law. In the judgment, the trial court thoroughly analyzed the three legal theories relied upon by the Coles: public passway, easement by prescription, and quasi-easement or easement by implication. After discussing the history of the two tracts and the disputed passway, the trial court held that none of the three legal theories supported the Coles' claim to a right of access over the Gilvins' property. This appeal followed.

We begin with the standard of appellate review. Since this case was tried before the court without a jury, its factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[2] A factual finding is not clearly erroneous if it

---

1. The alternative road would have to traverse several ravines onto another tract of land owned by Nelson Cole with access to another county road known as the Sharon Grove Road.

2. CR 52.01. *See also Lawson v. Loid,* Ky., 896 S.W.2d 1, 3 (1995); and *A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc .,* Ky. App., 998 S.W.2d 505, 509 (1999).

is supported by substantial evidence.[3] Substantial evidence is evidence of substance and relevant consequence sufficient to induce conviction in the minds of reasonable people.[4] "It is within the province of the fact-finder to determine the credibility of witnesses and the weight to be given the evidence."[5] With respect to property title issues, the appropriate standard of review is whether the trial court was clearly erroneous or abused its discretion, and the appellate court should not substitute its opinion for that of the trial court absent clear error.[6]

## I. PUBLIC ROADWAY

The Coles argue that the disputed passway was a public road. They state that there was "overwhelming" testimonial evidence that the passway was used by members of the community at large either to access homes once located along the passway or for various other reasons. They also assert that the passway (roadway) was repaired and/or improved by government employees by spreading gravel on it.

The trial court stated that although there was some evidence of public use of the passway, the evidence was too weak to make an affirmative finding that the passway qualified as a public road. It noted that there was no indication on any map that the passway was a public road.

In *Freeman v. Dugger*,[7] the Court stated:

"It is settled in this state that a general and long-continued use of a passway by the public as a right will create the right to continue the use and the owner of the land traversed by the passway who allows the public to use it as a highway for a long period of years under a claim of right will be estopped from denying a dedication to the public. Long-continued use[ ] by the public will constitute an implied acceptance of the dedication."[8]

■■■ Both the intention of the owner to dedicate and the acceptance by the public may be inferred from use by the public for a substantial number of years.[9] A roadway may become a public road upon general public use and control and maintenance by the government for 15 years.[10] The Coles rely on the case of *Whilden v. Compton*,[11] which held that "a public road can also be established [under a theory of dedication by estoppel] by general and long continued use of a passway by the public."[12] In *Whilden*, the Court referred to several facts that support the finding of a public road in that case such as use of

---

**3.** *Owens–Corning Fiberglas Corp. v. Golightly*, Ky., 976 S.W.2d 409, 414 (1998); *Faulkner Drilling Co. Inc. v. Gross*, Ky.App., 943 S.W.2d 634, 638 (1997); *Uninsured Employers' Fund v. Garland*, Ky., 805 S.W.2d 116, 117 (1991).

**4.** *Golightly*, 976 S.W.2d at 414; *Janakakis–Kostun v. Janakakis*, Ky.App., 6 S.W.3d 843, 852 (1999)(citing *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 308 (1972)).

**5.** *Garland*, 805 S.W.2d at 118.

**6.** *Church & Mullins Corp. v. Bethlehem Minerals Co.*, Ky., 887 S.W.2d 321, 323 (1992), *cert.*

denied, 514 U.S. 1110, 115 S.Ct. 1962, 131 L.Ed.2d 853 (1995).

**7.** Ky., 286 S.W.2d 894 (1956).

**8.** *Id.* at 896 (quoting *Gardner v. Hope*, 248 Ky. 270, 58 S.W.2d 353, 354 (1933)).

**9.** *Commonwealth, Department of Highways v. Wynn*, Ky., 396 S.W.2d 798, 800 (1965).

**10.** *Watson v. Crittenden County Fiscal Court*, Ky.App., 771 S.W.2d 47, 48 (1989).

**11.** Ky.App., 555 S.W.2d 272 (1977).

**12.** *Id.* at 274.

the roadway by residents along the roadway, use by customers of a resident who ran a blacksmith shop, repair and annual grading of the roadway by the county, and use for mail service to residents.

■ In the case *sub judice,* the evidence of public use consisted of testimony from a few witnesses for the Coles that the passway had been used by the general public for access to Whipplewill Creek and surrounding property for hunting and fishing. Some of the witnesses also stated that several families had lived along the passway, but they identified only a few, who had left the area prior to the 1940's. Moreover, Polly Collins testified that the passway was never used for mail service and that the mailboxes for the tenant families living on the Wells farm were maintained at the local grocery store. She also stated that the county did not supply gravel or grading for the passway, which was supported by testimony from the local magistrate. The Coles' reliance on *Whilden* is misplaced.[13] The sporadic use of a passway by a few neighbors or members of the general public does not turn it into a public road.[14] Therefore, the trial court was not clearly erroneous in finding that the Coles had failed to establish that the use of the disputed passway was of sufficient nature or frequency to justify establishing it as a public road.

■ In addition, the trial court held that even assuming the passway was considered a public road at some point, the evidence indicated that it had been abandoned by the early 1940's. The trial court stated:

> Even if it were assumed that road was at one time public, the facts clearly indicate that it was completely abandoned as

such by the early 1940's. There is little or no evidence of a public use of the road since that time. The use of a road on a privately owned farm by resident tenants, tenant employees or tenant farmers or their employees does not constitute use by the public. Neither does the use of a road by guest or invitees of the owners constitute public use of the road.

From the early 1940's until 1970 the only use of the road was for access to the private property of Marion Wells and the homes of his various tenants. From 1970 to 1984 the road serviced only the land of his children and his great grandson.

The conclusions of some witnesses that the road was "public" are based upon their seeing others and assuming that they did not have permission. In reaching their conclusions they may not have considered the family relationship of the owners of the tracts and the lack of any legitimate destinations along the road which might benefit the "public." The road led nowhere except to Marion Wells' field.

It can be assumed that, as with any rural property, there may have been occasional hunters or fishermen who trespassed without express or implied permission but there is no evidence that this type of incident was more frequent than as occurs upon any other rural property or was so frequent or pervasive so as to amount to public use. Other than to assist in farming operations or to visit the owners of the three properties or their tenants, or to hunt or fish, there was simply no place for the "public" to

**13.** *See also Cummings v. Fleming County Sportsmen's Club, Inc.,* Ky., 477 S.W.2d 163 (1972).

**14.** *See Clark v. Cunning,* 302 Ky. 779, 196 S.W.2d 609 (1946).

get to using this road since the early 1940's.

In *Sarver v. County of Allen,*[15] the Court held that non-use of a public road for over 15 years constitutes an abandonment of that status. Additionally, it indicated that travel on the roadway for access to private residences and acts by county officials in improving or maintaining a road do not constitute a continued public use sufficient to negate abandonment.[16] There was sufficient evidence to support the trial court's finding that the passway had not been used as a public road in excess of 15 years and thus had been abandoned.

## II. PRESCRIPTIVE EASEMENT

 The second theory addressed by the trial court and raised in the complaint is easement by prescription. The law of prescriptive easements is derived from the principles underlying adverse possession of property interests generally.[17] As a general matter, in order to obtain a right to a prescriptive easement, a claimant's adverse use must be "actual, open, notorious, forcible, exclusive, and hostile, and must continue in full force ... for at least fifteen years."[18] A prescriptive easement is a property right in one landowner (dominant tenement) representing a privilege to use the land of another (servient tenement) and is based on a presumed grant that arises from the adverse, uninterrupted, and continued use for a 15-year statutory period.[19] "[T]he adverse possession of a grantee may be tacked on to that of his grantor to complete the statutory period."[20]

In *Pickel v. Cornett,*[21] the former Court of Appeals noted that while the elements for obtaining a prescriptive easement were similar to those for obtaining a fee simple title to land by adverse possession, the former represented an incorporeal hereditament with a less stringent standard of use.

> A private passway may be acquired by prescriptive use although a right of way is not strictly a subject of continuous, exclusive, and adverse possession. It is sufficient if the use exercised by the owner of the dominant tenement is unobstructed, open, peaceable, continuous, and as of right for the prescribed statutory period [citations omitted].[22]

 Continuous, uninterrupted use of a passway without interference for 15 years or more raises a presumption the use was under a claim of right and the burden shifts to the opposing landowner to present evidence to rebut the presumption showing it was merely permissive.[23] However, it is well-established that if the right to use a passway at its inception is permissive, the existence of a prescriptive easement or even a presumption of a claim of

15. Ky., 582 S.W.2d 40 (1979).

16. *Id.* at 43.

17. *See Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.,* Ky., 15 S.W.3d 727, 730 (2000).

18. *Jackey v. Burkhead,* Ky., 341 S.W.2d 64, 65 (1960)(quoting *Riley v. Jones,* 295 Ky. 389, 174 S.W.2d 530, 531 (1943)).

19. *Illinois Central R. Co. v. Roberts,* Ky.App., 928 S.W.2d 822, 827 (1996).

20. *Martin v. Kane,* Ky., 245 S.W.2d 177, 178 (1951).

21. 285 Ky. 189, 147 S.W.2d 381 (1941).

22. *Id.* 285 Ky. at 191, 147 S.W.2d at 382. *See also Lyle v. Holman,* Ky., 238 S.W.2d 157 (1951)(recognizing prescriptive easement to alley used by tobacco trucks only during tobacco marketing season).

23. *See Ward v. Stewart,* Ky., 435 S.W.2d 73, 75 (1968); *Finney v. Deweese,* Ky., 252 S.W.2d 6 (1952); *Lyle,* 238 S.W.2d at 160.

right does not arise unless there has been some distinct and positive act of assertion of right made clearly known to the owner of the servient tenement.[24] The right to use a passway as a prescriptive easement cannot be acquired no matter how long the use continues if it originated from permission by the owner of the servient tenement.[25]

■ The trial court held that the Coles did not acquire a prescriptive easement because they failed to show adverse use of the passway for more than 15 years. As part of that ruling, the trial court found that any use of the passway from the 1940's to 1984, when a non-family member (the FHA) first acquired ownership of a portion of the property, was permissive. The passway was used primarily by members of the Wells family, tenants of Marion Wells, and guests or invitees of the three Wells children who inherited the various tracts. Todd Hurt and Polly Collins both testified that family members freely used the passway without having to obtain permission. The trial court's finding that this use was permissive is supported by the evidence. No distinct and clear assertion of a claim of right to use the passway was brought to the attention of the Gilvins until 1998 by Nelson Cole. Consequently, the trial court's finding that the Coles did not establish adverse use of the passway for the requisite 15 year time period to create

a prescriptive easement was not clearly erroneous.[26]

## III. QUASI–EASEMENT

■ The third theory raised by the Coles is that they obtained a right to use the passway as a quasi-easement or easement by implication. This theory is based on a legal inference that the original owner intended to create an easement in favor of one section of his realty. A quasi-easement is based on the rule that "where the owner of an entire tract of land or of two or more adjoining parcels employs one part so that another derives from it a benefit of continuous, permanent and apparent nature, and reasonably necessary to the enjoyment of the quasi-dominant portion, then upon a severance of the ownership a grant or reservation of the right to continue such use arises by implication of law." [27] Generally, in order to prove an easement by implication of law, a party must show: (1) that there was a separation of title from common ownership; (2) that before the separation occurred the use which gave rise to the easement was so long continued, obvious, and manifest that it must have been intended to be permanent; and, (3) that the use of the claimed easement was highly convenient and beneficial to the land conveyed.[28] Because a quasi-easement involves the intentions of the parties, the date the unity of ownership ceases and there is a severance of

**24.** See McCoy v. Hoffman, Ky., 295 S.W.2d 560, 561 (1956); Lambert v. Huntsman, 306 Ky. 862, 209 S.W.2d 709, 711 (1948); Clark v. Cunning, 302 Ky. 779, 196 S.W.2d 609, 611 (1946); Ward, 435 S.W.2d at 75.

**25.** See Rominger v. City Realty Co., Ky., 324 S.W.2d 806, 808 (1959); Tapley v. Lee, 305 Ky. 673, 205 S.W.2d 310, 312 (1947).

**26.** Cf. Bowens v. Amburgey, 289 Ky. 763, 160 S.W.2d 169 (1942)(affirming finding of no easement over passway where use of passway

was primarily by family members and tenants prior to conveyance by children of original owner).

**27.** Kreamer v. Harmon, Ky., 336 S.W.2d 561, 563 (1960). See also Swinney v. Haynes, 314 Ky. 600, 236 S.W.2d 705 (1951).

**28.** Evanik v. Janus, 120 Ill.App.3d 475, 485, 76 Ill.Dec. 308, 458 N.E.2d 962, 969 (1983); Bob's Ready to Wear, Inc. v. Weaver, Ky.App., 569 S.W.2d 715, 718 (1978).

common ownership is the point of reference in ascertaining whether an easement has been imposed upon adjoining land.[29]

▮▮ Factors relevant to establishing a quasi-easement include: "(1) whether the claimant is the grantor or the grantee of the dominant tract; (2) the extent of necessity of the easement to the claimant; (3) whether reciprocal benefits accrue to both the grantor and grantee; (4) the manner in which the land was used prior to conveyance; and (5) whether the prior use was or might have been known to the parties to the present litigation."[30] The courts have implied an easement more readily in favor of a grantee than a grantor because a grantor has the ability to control the language in the deed to express the intentions of the parties.[31] Whether the prior use was known involves not absolute direct knowledge, but "susceptibility of ascertainment on careful inspection by persons ordinarily conversant with the subject."[32] Also, the use must be "reasonably necessary" meaning more than merely convenient to the dominant owner, but less than a total inability to enjoy the property absent the use.[33] While all of the factors are considered, the factor involving necessity is considered the most important.[34]

The Coles argue that the above factors support their claim that they obtained an implied quasi-easement to use the passway. The Coles contend that they should be considered grantees because they purchased their property before the Gilvins, who should be treated as grantors standing in the shoes of the FHA. The Coles further state that any doubts should be resolved in their favor as grantees. They also claim use of the passway was reasonably necessary because construction of an alternative route would cost approximately $42,000.00. The Coles assert that the passway was used consistently by the Wells family and others for an extended period of time. Finally, they maintain that the Gilvins had constructive notice of the existence of a passway easement.

▮▮ The trial court held that the theory of quasi-easement did not apply because the Gilvins were bona fide purchasers who purchased without actual or constructive knowledge of a passway easement in favor of the Coles. The trial court unnecessarily invokes equitable principles of estoppel that are more readily applicable to the law of licenses than easements.[35] Quasi-easement involves implying by operation of law the use of property based on a determination of the intent of the parties from the circumstances surrounding creation of an easement and the conveyance. Estoppel, meanwhile, concerns prohibiting a party from denying the existence of a

**29.** *Evanik,* 120 Ill.App.3d at 486, 76 Ill.Dec. 308, 458 N.E.2d at 969; *Thompson v. Schuh,* 286 Or. 201, 593 P.2d 1138, 1145–46 (1979); *Boyd v. McDonald,* 81 Nev. 642, 650 n. 6, 408 P.2d 717, 721 n. 6 (1965)(noting that evidence of later conveyances by original owner was only relevant to show intentions with respect to initial severance); *Holden v. Weidenfeller,* 929 S.W.2d 124 (Tex.App.1996).

**30.** *Bob's Ready To Wear, Inc.* 569 S.W.2d at 719 (citing *Knight v. Shell,* 313 Ky. 852, 233 S.W.2d 973 (1950), and *Restatement of the Law of Property* § 476 (1944)). *See also Sievers v. Flynn,* 305 Ky. 325, 204 S.W.2d 364 (1947).

**31.** *Knight,* 233 S.W.2d at 975; *Restatement of the Law of Property* § 476 cmt. c.

**32.** *Sievers,* 305 Ky. at 328, 204 S.W.2d at 366.

**33.** *Id.* This factor is different from and less stringent than the analysis applicable to creating an implied easement by necessity.

**34.** *Knight,* 233 S.W.2d at 975–76.

**35.** *See, e.g., Bob's Ready to Wear, supra; Buffington v. Buffington,* 390 Pa.Super. 61, 568 A.2d 194 (1989).

right to use property, i.e., a license, based on justifiable reliance that the license will continue. The reliance derives from conduct by the licensor and typically also includes actions by the licensee such as the making of improvements based on that reliance.[36] Unlike a quasi-easement, an easement by estoppel or a license is not appurtenant to the land.[37] There is no evidence that the Gilvins induced reliance on the part of the Coles, so the principle of estoppel for purposes of recognizing a quasi-easement would not apply.

■■■■■ Generally, a purchaser takes possession of property subject to all easements and encumbrances including implied easements.[38] However, subsequent bona fide purchasers take possession of property subject to roadway easements only if they have actual or constructive knowledge of the existence of the easement.[39] A purchaser is considered to have constructive knowledge of the implied quasi-easement when the passway is obvious and visible from an inspection of the property.[40]

In the current case, the trial court found that the Gilvins did not have actual or constructive knowledge of the passway easement when they purchased their property in 1988. It noted that none of the deeds concerning Marion Wells' property mentioned or contained an easement associated with this passway. The trial court also stated that the actual use of the passway was so infrequent and the appearance of the passway was such that the Gilvins could not be held to have been placed on notice of the passway as a necessary means of access to the Coles' tract.

■■■■ A review of the record indicates that this finding is supported by the evidence and is not clearly erroneous. Polly Collins testified that the passway generally was used very seldom and was in poor condition. She stated that she did not attempt to maintain it. Photographs of the area and Nelson Coles' testimony indicate that the portion of the passway on the Coles' property was overgrown with vegetation. Shirley Gilvin stated that while her family used the passway to get to their tract prior to purchasing it, the passway was in poor condition at that time. She said they never saw anyone using the passway and believed it was the main route for access to their tract. Dan Gilvin testified that when the family purchased their property, the passway was poorly maintained and covered with grass. He said that based on his viewing of the area in 1988, he believed the passway ended on the Gilvins' tract near the boundary with the Coles' tract, and he never saw Nelson Cole use the passway. We believe there was substantial evidence that the Gilvins reasonably should not have been aware of the existence of an easement or the prior use of the passway as an access route to the Coles' tract. Thus, even assuming an implied quasi-easement existed when the property owned by Marion Wells was separated by partition, the Gilvins did not take title to their tract subject to the easement.

**36.** See Bob's Ready to Wear, supra; Loid v. Kell, Ky.App., 844 S.W.2d 428 (1992).

**37.** See Loid, 844 S.W.2d at 430.

**38.** Sievers, supra; Hedges v. Stucker, 237 Ky. 351, 35 S.W.2d 539 (1931).

**39.** See Lawson v. Campbell, 299 Ky. 284, 185 S.W.2d 391, 393 (1945)(a purchaser takes property subject to whatever encumbrances were placed thereupon by obvious and known passway in favor of adjoining land owners); Casey v. Hensley, 245 Ky. 308, 53 S.W.2d 698 (1932); Renner v. Johnson, 2 Ohio St.2d 195, 207 N.E.2d 751 (1965).

**40.** Id.; see also Smith v. Smith, 304 Ky. 562, 201 S.W.2d 720 (1947)(involving prescriptive easement).

For the foregoing reasons, the judgment of the Todd Circuit Court is affirmed.

DYCHE, Judge, CONCURS.

BARBER, Judge, dissents and files separate opinion.

BARBER, Judge, dissenting:

The Coles purchased a piece of property from the Farmers Home Administration in February 1986. Access to the property, at the time of purchase, was by a passway from the county road over an adjacent piece of property. In April 1988, the Gilvins purchased the property on which the passway lay from Farmers Home Administration. Both pieces of property had originally been owned as a single tract by Marion and Minnie Wells. The record indicates that the passway was in existence prior to the conveyance of the property to the Farmers Home Administration. The passway was in existence and in use at the time both the Coles and the Gilvins purchased their respective tracts. Nelson Cole used the passway at least annually to gain access to his property for maintenance purposes. The Gilvins built a separate roadway to gain access to their property.

In 1998, the Gilvins blocked access to the passway by means of a locked gate. This left the Coles with no access to their property. They filed a civil action seeking a declaration as to the existence of an easement in the passway to their property. It is uncontroverted that the passway had been in use since 1940, and the passway had never been blocked by the owner of the property. No feasible alternate route would afford access to the property. The parties all testified that any alternative passway to the property would have to pass over adjacent tracts and that the Coles would incur substantial costs in building such a roadway.

The majority correctly affirms the trial court in that the Coles' claim of public roadway or easement by prescription is not supported by the evidence. Yet, the Coles are entitled to an easement by implication or an easement by necessity; I respectfully dissent from the majority opinion's failure to recognize this remedy. An easement by implication, or quasi-easement, occurs when the original property owner creates a passway enabling access to a section of his realty. *Kreamer v. Harmon*, Ky., 336 S.W.2d 561, 563 (1960). The majority acknowledges that such an easement exists where (1) there is a separation of title from common ownership, (2) the separation occurs after long and continuous use of the easement, and (3) that the use of the easement is highly convenient and beneficial to the land conveyed. *See Bob's Ready to Wear, Inc. v. Weaver*, Ky.App., 569 S.W.2d 715, 718 (1978).

It is uncontroverted that the Cole property and the Gilvin property derive from common ownership. Similarly, it is uncontroverted that the easement has been in long and continuous use, and such use began long before the tracts were separated. The evidence before the trial court further established that the use of the claimed easement was highly convenient and beneficial to the land conveyed. In fact, without building a new road across separate tracts of property, there is no other access to the tract conveyed. Under such circumstances, an easement by implication is proper.

A purchaser takes possession of realty subject to any easement of which he has actual or constructive knowledge. *Lawson v. Campbell*, 299 Ky. 284, 185 S.W.2d 391, 393 (1945). The testimony of numerous witnesses showed that the passway had been in use prior to 1940, and this use to gain access to the Cole tract was well known. For two years prior to the Gilvins'

purchase of their tract, the passway was regularly used by the Coles to gain access to their land. Where the prior use is capable of ascertainment by careful inspection, the servient estate must be bound by the easement. *Sievers v. Flynn,* 305 Ky. 325, 204 S.W.2d 364 (1947).

Where the easement is necessary for the enjoyment of that portion of the property transferred, the easement passes by implication. *Hedges v. Stucker,* 237 Ky. 351, 35 S.W.2d 539, 540 (1931). If the original owner of the property accessed the tract by means of the passway, the easement should pass to successive owners by implication. *Hall v. Coffey,* Ky.App., 715 S.W.2d 249, 250 (1986). The easement has always been necessary to reach that portion of the property now owned by the Coles. The necessity of the easement to the Coles is clear; it is reasonably necessary for the Coles to reach their tract, and no other means of ingress or egress exists. Under such circumstances, an easement must be found. *Sievers* at 366.

For the forgoing reasons, I respectfully dissent from the majority's opinion.