RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0242-MR

SCOTT HILL AND LORRIE HILL                  APPELLANTS

                APPEAL FROM KENTON CIRCUIT COURT
v.               HONORABLE KATHLEEN LAPE, JUDGE
                ACTION NO. 18-CI-01603

MARC TISCHBEIN; DAVID A.
KLINGSHIRN, AS TRUSTEE OF THE
DAVID A. KLINGSHIRN TRUST;
DAVID A. KLINGSHIRN,
INDIVIDUALLY; GENERAL
ELECTRIC CREDIT UNION; AND
PEGGY RANKIN                        APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Scott Hill and Lorrie Hill bring this appeal from a February 1, 2022, Order Granting Summary Judgment on Marc Tischbein and Peggy Rankin's claims for adverse possession and prescriptive easement as to a garage and driveway/gate located on the Hills' property. We reverse and remand.

The relevant history of the real property at issue in this appeal, 420-422 Riverside Drive and 109 Shelby Street, in Covington, Kentucky, spans more than three decades. Thus, we will recite only the facts germane to disposition of this appeal.

In 1986, David A. Klingshirn acquired title to 420-422 Riverside Drive (hereinafter referred to as the Main House). Klingshirn partnered with Marc Tischbein to assist in financing the purchase and renovation of the Main House property. Klingshirn and Tischbein planned to renovate the property and eventually sell it for profit. It is undisputed that Tischbein contributed to the costs associated with the purchase, renovation, and upkeep of the Main House property despite his name not appearing on the deed and there being no written agreement. Both Klingshirn and Tischbein moved into the Main House shortly after the purchase and proceeded with the renovation.

In early 1993, Klingshirn and Tischbein had the opportunity to purchase real property located at 109 Shelby Street (hereinafter referred to as the Coach House). The Coach House property directly abutted the Main House property to the rear.[1] Klingshirn, Tischbein, and Tischbein's then-fiancée, Peggy

---

[1] Apparently, the two parcels, 420-422 Riverside Drive (the Main House) and 109 Shelby Street (the Coach House), were originally one parcel. The two parcels were divided well before David A. Klingshirn, Marc Tischbein, or Peggy Rankin became involved with either property.

Rankin, apparently agreed that the Main House property would be more valuable if they also owned the Coach House. So, by deed dated April 30, 1993, Klingshirn, Tischbein, and Rankin acquired title to the Coach House. Thereafter, the three parties jointly financed a renovation of the Coach House, an update of the Main House, construction of two garages, and installation of a driveway/gate. In 1994, Tischbein and Rankin married and lived in the Main House; Klingshirn moved into the Coach House.

Shortly after the purchase of the Coach House, the first garage was constructed upon the Coach House property. The first garage directly adjoined the Coach House and had an exit into the Coach House basement. Klingshirn utilized this garage. A second garage was also constructed upon the Coach House property and adjoined the first garage, with a shared common wall. The second garage was the closest of the two garages to the Main House. Tischbein used the second garage. A driveway/gate was also constructed to provide access to both garages and to provide additional parking. The only access to the driveway was through a gate that opened onto Shelby Street. Prior to this construction, the only parking available to the Main House and the Coach House had been street parking.

Then, in 1998, title to the Main House was transferred from Klingshirn to Klingshirn and Tischbein. Thereafter, in 2001, Klingshirn, Tischbein, and Rankin decided to separate their ownership interest in the Main

House and the Coach House. By deeds dated June 28, 2001, Klingshirn conveyed his interest in the Main House to Tischbein and Rankin; Tischbein and Rankin conveyed their interest in the Coach House to Klingshirn. Klingshirn continued to live in the Coach House and utilize the first garage. Tischbein and Rankin continued to live in the Main House, and Tischbein continued to use the second garage. All three parties utilized the driveway/gate on the Coach House property to access the garages.

In the fall of 2017, Klingshirn, who was then 79 years old, wanted to sell the Coach House property. Klingshirn approached Tischbein and told him that he wanted to sell. Klingshirn hoped the two properties could be sold together for a larger profit or that Tischbein and Rankin would buy the Coach House from him. When it became obvious to Klingshirn that Tischbein and Rankin were not going to agree to sell the two properties together or purchase the Coach House, Klingshirn listed the Coach House with a realtor.

In the spring of 2018, Scott and Lorrie Hill became interested in purchasing the Coach House. At that time, Klingshirn informed the Hills of what Klingshirn called a "gentleman's agreement." Klingshirn explained that the gentleman's agreement allowed Tischbein to use the second garage located upon the Coach House property. The Hills then decided to have a survey conducted of the Coach House property. The survey revealed that the second garage was, in

fact, located almost entirely on the Coach House property.[2]  Shortly after closing

upon the purchase of the Coach House in June of 2018, the Hills met with

Tischbein and Rankin and offered a license that would allow Tischbein and Rankin

to continue using the second garage and the driveway/gate; the Hills just wanted a

writing to commemorate the agreement.  Much to the Hill's surprise, Tischbein

and Rankin refused the offer.

On August 31, 2018, Tischbein and Rankin filed a Verified Complaint

for Declaratory Judgment, Quiet Title, and Equitable Relief in the Kenton Circuit

Court naming Scott Hill and Lorrie Hill as defendants.  Therein, Tischbein and

Rankin claimed ownership of the second garage by adverse possession and use of

the common driveway/gate by prescriptive easement.  Tischbein and Rankin

subsequently filed an Amended Verified Complaint on September 21, 2018,

naming General Electric Credit Union, the Hills' mortgage holder, as a defendant.

On February 22, 2019, the Hills filed a motion for summary judgment.

Therein, the Hills asserted that Tischbein and Rankin's claim for title to the second

garage was defeated by failure to satisfy the "hostile" element of adverse

possession.  Tischbein and Rankin also filed a motion for partial summary

judgment on February 22, 2019.  Therein, Tischbein and Rankin asserted that they

---

[2] Apparently, one of the exterior walls of the second garage slightly encroached upon the Main House property.  This encroachment has not been argued or relied upon by the parties to this appeal.

held an irrevocable license for use of the second garage and the driveway/gate. On September 5, 2019, the Hills amended their answer and filed a counterclaim against Tischbein and Rankin and filed a third-party complaint against Klingshirn.

By order entered April 6, 2020, the circuit court denied the Hills' motion for summary judgment. The circuit court further stated that although it believed the record was supportive of Tischbein and Rankin's claim for adverse possession, Tischbein and Rankin had not moved for summary judgment on that claim; thus, the circuit court could not adjudicate same. Rather, the circuit court determined that Tischbein and Rankin had an irrevocable license:

> This court finds that, at a minimum, Tischbein and Rankin had a license from Klingshirn to use them [the second garage and driveway/gate]. If their use is determined to be permissive, as argued by The Hills and Klingshirn, it would amount to a license based upon Klingshirn's own testimony.
>
> . . . .
>
> It is this court's opinion that, as a matter of law, Tischbein and Rankin have, at a minimum, an irrevocable license of which the Hills are barred from revoking by equitable principles. In finding this, however, the court is not precluding Tischbein and Rankin from continuing to pursue their adverse possession and easement claims.

April 6, 2020, Order at 21-22. The April 6, 2020, order did not adjudicate all the rights of all the parties and it did not contain the finality recitations of Kentucky Rules of Civil Procedure (CR) 54.02. The Hills then filed a motion to alter,

-6-

amend, or vacate the April 6, 2020, order, which was denied by order entered May 18, 2020.

Tischbein and Rankin thereafter filed a motion for summary judgment as to their claims for adverse possession of the second garage and a prescriptive easement as to the driveway/gate. By order entered February 1, 2022, the circuit court granted summary judgment in favor of Tischbein and Rankin on their claims for adverse possession and prescriptive easement. The February 1, 2022, order specifically provided:

> Plaintiffs [Tischbein and Rankin] have established title through adverse possession by establishing the existence of all five elements of their claim for a fifteen-year period. Defendants [the Hills], in turn, have failed to show any act by Klingshirn asserting his ownership or conveying his consent to Tischbein's and Rankin's use of the property which would bar their claim.
>
> . . . .
>
> For all the reasons stated above finding Plaintiff's [Tischbein and Rankin] adverse possession of the Main House garage, this court finds a prescriptive easement for the use of the driveway and gate to access the Main House garage.
>
> . . . .
>
> Motion of Plaintiffs, Marc Tischbein and Peggy Rankin, for Summary Judgment on their adverse possession claim regarding the Main House garage and prescriptive easement claim regarding the entry gate and driveway is **SUSTAINED**.

February 1, 2022, order at 20, 22. The February 1, 2022, order contained complete CR 54.02 language. This appeal follows.

The Hills initially contend the circuit court erred by granting summary judgment in favor of Tischbein and Rankin on their claim for adverse possession as to the second garage. More particularly, the Hills assert that summary judgment was improper as there was abundant evidence that Tischbein and Rankin's possession of the second garage was permissive, thus precluding satisfaction of the hostile element required for adverse possession.

Summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. CR 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). When considering a summary judgment, all facts and inferences therefrom are to be viewed in a light most favorable to the nonmoving party. And, the court is to consider all evidentiary facts contained in the record. *Collins v. Duff*, 283 S.W.2d 179, 183 (Ky. 1955). Upon review of the record before this Court, we conclude that material issues of fact exist precluding entry of summary judgment.

To sustain a claim under adverse possession, the claimant must prove by clear and convincing evidence that possession of the property has been: (1) hostile and under a claim of right, (2) actual, (3) exclusive, (4) continuous, and (5) open and notorious. *Moore v. Stills*, 307 S.W.3d 71, 77 (Ky. 2010) (citations

-8-

omitted).  These elements must be maintained for the statutorily requisite period of fifteen years.  *Id.* at 78; Kentucky Revised Statutes (KRS) 413.010.  And, "[f]ailure to prove even one of the elements is fatal to an adverse possession claim."  *Hogg v. Hogg*, 619 S.W.3d 921, 929 (Ky. App. 2020).  Particularly relevant to this appeal, is whether there exists a material issue of fact upon the hostility element of their adverse possession claim as to the second garage.

It is well settled that permissive use is generally not hostile and, therefore, "possession by permission cannot ripen into title no matter how long that period of possession is continued."  3A Robert W. Keats, *Kentucky Practice – Real Estate Transactions* § 19:3 (2023); *see also United Hebrew Congregation of Newport v. Bolser*, 50 S.W.2d 45 (Ky. 1932).

In the case *sub judice*, there was conflicting evidence upon whether Tischbein and Rankin's use of the second garage was permissive rather than hostile.  Klingshirn provided the following depositional testimony:

> Q.   Now, your testimony was, and correct me if I'm wrong, that there was a gentleman's agreement that [Tischbein] got to use the garage?
>
> A.   Yea, right.
>
> Q.   When did that agreement begin?
>
> A.   When we built the second garage.  Because it made the property look better because it was going - - we were going to sell it as one piece of property, you

know.  So we never thought about breaking up the property.

Q.　　So was - - I'm trying to get to the bottom of what this gentleman's agreement was and how you knew that you had a gentleman's agreement, because both of you are referring to a gentleman's agreement - -

A.　　Yes.

Q.　　-- but both of you think it means - - according to your testimony - - sworn testimony that Mr. Tischbein gave and that you're giving now, that they mean different things.  Okay?

A.　　Yea.  I mean - -

Q.　　So - - so he said - -

A.　　I can't image why anybody would say, here, I'm just going to give you this - - my land, you know. Because - - because even to get to that second garage, they got to drive through all the property of 109 Shelby. You can't even get to that second garage, which you call Marc's garage, unless you drive through 109 Shelby.

. . . .

Q.　　So - - so I guess the answer to my question is, did you - - did you or did you not understand that the second garage was part of 109 Shelby when you exchanged those deeds?

A.　　109 - - both garages were on 109 Shelby.

. . . .

Q.　　So is [Rankin] telling the truth when she says there was an agreement between you and her and

-10-

Marc that they got to maintain ownership of that second garage when you split the property's ownership?

A.    Not - - not ownership.  They go to use the garage.  I didn't say, you own the property.  In fact, it was just never even - - I never even had a conversation with Peggy about it.  It was just that we were selling this total piece of property.  Marc was parking there, I was parking there, and Peggy was able to drive through the coach house property to get onto their property.

June 17, 2019, Deposition of Klingshirn at 73, 74, 76, 77.

Rankin's depositional testimony, on the other hand, provided:

Q.    Okay.  So, I'm happy to use the terminology, even though there was no written agreement, that the three of you had an agreement, okay?

And the reason why I'm calling it an understanding, but I will - - I'll use the term agreement - - is because we can't flesh out the terms of the agreement without a written document.  And that's what I'm trying to understand is what were the terms.

A.    It was the terms - - the same as they stood from 1994 when the garage was complete - - that the garage with with 109, attached to that, the other garage belonged to us.  And we used that garage starting in 1994.

Q.    Okay.  And your testimony is - - and I believe - - I don't want to characterize it this way, but Marc said pretty much the same thing that - - he called it a gentleman's agreement.  Would that be something that you would characterize it as well?

A.    No.

-11-

Q. Okay. Then what would you characterize it as?

A. I'm going to classify it as a - - and it may not be on paper, but it was a total legal understanding between the three of us that David owned the garage at 109 and we owned the garage on the other property, the 420 garage.

Q. Okay. So how were you planning on conveying that agreement amongst the three of you to the rest of the world?

A. I never though there was any need to, because our agreement was that the garages belonged to each property. And my understanding was - - and the properly line went right down the middle of the garages.

May 30, 2019, deposition of Peggy Rankin at 82-84.

The depositional testimony of Klingshirn and Rankin is conflicting upon the facts surrounding the use and/or ownership of the second garage. Klingshirn's depositional testimony indicated that a gentleman's agreement existed whereby he gave Tischbein/Rankin permission to use the second garage and driveway/gate. Rankin's testimony, on the other hand, was that she believed the second garage was on the Main House property and that she and Tischbein owned the second garage. Where, as here, the proffered testimony is crucial to the ultimate factual determination, the weight and credibility of that testimony make summary judgment inappropriate. We, therefore, conclude that a genuine issue of

-12-

material fact existed as to the hostile element of the adverse possession claim, thus precluding summary judgment.[3]

The Hills likewise contend the circuit court erred by granting summary judgment in favor of Tischbein and Rankin on their claim for a prescriptive easement as to the driveway/gate. More specifically, the Hills contend that summary judgment was improper as the evidence demonstrated that Tischbein and Rankin's use of the driveway/gate was permissive, thus precluding satisfaction of the adverse element of a prescriptive easement.

The law of prescriptive easements was succinctly summarized in the case of *Cole v. Gilvin*, 59 S.W.3d 468 (Ky. App. 2001), where it was stated:

> A prescriptive easement is a property right in one landowner (dominant tenement) representing a privilege to use the land of another (servient tenement) and is based on a presumed grant that arises from the adverse, uninterrupted, and continued use for a 15–year statutory period. . . .
>
>    . . . .
>
> **The right to use a passway as a prescriptive easement cannot be acquired no matter how long the use continues if it originated from permission by the owner of the servient tenement.**

*Id.* at 475-76 (emphasis added).

---

[3] We acknowledge that Klingshirn's deposition testimony was at times seemingly in conflict. However, upon the issue of permissive use of the second garage and driveway, a jury is best suited to judge the credibility of the testimony provided by Klingshirn, Tischbein, and Rankin.

As the depositional testimony of Klingshirn and Rankin demonstrates, the driveway/gate located upon the Coach House property was treated in the exact same manner as the second garage. Therefore, the same material issue of fact upon permissive use that precluded summary judgment on the adverse possession claim as to the second garage also precludes summary judgment on the prescriptive easement claim as to the driveway/gate. Hence, we are of the opinion that the circuit court erred by rendering summary judgment upon the prescriptive easement claim.

The Hills next contend the circuit court erred by granting summary judgment in favor of Tischbein and Rankin as to the grant of an irrevocable license in the second garage and the driveway/gate in its April 6, 2020, order. More specifically, the Hills assert the circuit court erred as Tischbein and Rankin had not pleaded a claim for an irrevocable license. Additionally, the Hills assert that material issues of fact remained regarding the irrevocable license and that even if there were a license, it would not have survived the sale of the property to the Hills.

It is well-established that "Kentucky is a notice pleading jurisdiction, where the central purpose of pleadings remains notice of claims and defenses." *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 671 (Ky. 2022) (citing *Russell v. Johnson & Johnson, Inc.*, 610 S.W.3d 233, 240 (Ky. 2020); CR 8.01).

-14-

CR 8.01, entitled *Claims for Relief*, provides, in relevant part:

(1) A pleading which sets forth a claim for relief, . . . shall contain (a) a short and plain statement of the claim showing that the pleader is entitled to relief and (b) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

In the case *sub judice*, a review of the Verified Complaint for Declaratory Judgment, Quiet Title and Equitable Relief and the Amended Verified Complaint reveal that Tischbein and Rankin did not plead a claim for an irrevocable license. It is clear that where a party fails to plead a claim, the party cannot be entitled to summary judgment on such claim. *See Watson*, 642 S.W.3d at 671. As Tischbein and Rankin never pleaded a claim for an irrevocable license, they cannot be entitled to summary judgment on same. Therefore, we believe the circuit court erred in its April 6, 2020, order by granting summary judgment in favor of Tischbein and Rankin on the theory of an irrevocable license. Furthermore, if Tischbein and Rankin had sufficiently pleaded an irrevocable license claim, we harbor grave doubt that Tischbein and Rankin could succeed on such claim when Rankin's testimony was that she and Tischbein owned the garage.

The Hills also contend that the circuit court erred by granting Tischbein and Rankin's motion to dismiss the Hills' Second Amended Counterclaim. More specifically, the Hills assert that summary judgment on the adverse possession claim "made other determinations that must also logically be

reversed given the consensual and permissive nature of Tischbein/Rankin's use." Appellant's Brief at 22.

In light of our decision to reverse the circuit court's grant of summary judgment on the claims for adverse possession and prescriptive easement, we believe the circuit court should reconsider its judgment dismissing the Hills' second amended counterclaim.

In sum, we hold that the circuit court erred by rendering summary judgment in favor of Tischbein and Rankin on their claims for adverse possession, prescriptive easement, and irrevocable license. Thus, we reverse the circuit court's summary judgments on those claims. We, likewise, reverse the circuit court's decision to dismiss the Hills' second amended counterclaim.

We view any remaining contentions of error to be moot or without merit.

For the foregoing reasons, the order of the Kenton Circuit Court is reversed and remanded for proceedings consistent with this Opinion.

JONES, JUDGE, CONCURS.

CETRULO, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANTS:

Kevin L. Murphy
J. Jeffrey Landen
Fort Mitchell, Kentucky

BRIEF FOR APPELLEES, MARC
TISCHBEIN AND PEGGY RANKIN:

Kent W. Seifried
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE, GENERAL
ELECTRIC CREDIT UNION:

Tyler C. Arnzen
Thomas A. Wietholter
Cincinnati, Ohio