RENDERED: NOVEMBER 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0294-MR

RULIE HUTCHINSON                                              APPELLANT

v.                    APPEAL FROM BATH CIRCUIT COURT
                 HONORABLE WILLIAM EVANS LANE, JUDGE
                          ACTION NO. 19-CI-90154

CRAIG MURAWA                                                  APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: DIXON, McNEILL, AND K. THOMPSON, JUDGES.

DIXON, JUDGE: Rulie Hutchinson appeals the judgment of the Bath Circuit

Court, entered March 2, 2021, determining that an easement by estoppel permitted

Craig Murawa's continued use of a road on Hutchinson's property. After a careful

review of the briefs, the record, and the law, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

This case arises from Murawa's use of a gravel road, approximately 30 feet by 900 feet, which runs south from Hutchinson's 27 acres of land to Blueberry Lane, a county road along the western boundary of Murawa's property. It is undisputed that Murawa has neither a claim of title nor an express written easement regarding the road.

Historically, the Hutchinson property has been conveyed multiple times. Relevantly, in 1968, a deed was executed conveying to Wayne and Annie Wells ownership of a 27-acre tract and a smaller tract described as a strip of land running north from the road to the 27-acre tract which is part of this litigation. Surveyor Robert Baldwin determined this strip roughly matches the road at issue herein. After 1968, the 27-acre tract was conveyed multiple times until ultimately being deeded to Joe Wright in 1985; to Joe's daughter, Melinda Wright, in 1997– subject to Joe's and his wife's life estate in the property–and finally to Hutchinson in 2006. None of these conveyances included the road.

In 2009, while in the process of refinancing his 27-acre tract, Hutchinson was advised that his deed did not contain access to Blueberry Lane, *i.e.*, it did not include the road. In an attempt to rectify what Hutchinson testified was a mutual mistake, Melinda Wright executed a new deed conveying an obscure reference to a passway which Hutchinson believed–albeit erroneously–to be the

road. It is unclear when Hutchinson became aware of the ongoing title defect; however, in 2020, after the underlying action was initiated, Hutchinson received a "Deed of Conveyance and Deed of Correction," wherein Annie Wells (now known as Stapleton) formally deeded the road to Hutchinson. Robert Baldwin's plat of the road was filed August 17, 2020, with the Bath Circuit Clerk.

In 1997, Penny Justice (now known as Deskins) and James T. Justice acquired what is now Murawa's property by deed. In approximately 2000, the Justices began building a residence along the western boundary of the property, which they oriented west, facing the road approximately 50 to 60 feet away. In explaining the orientation, Penny testified it was prettier as it provided a view of the fields, woods, and skyscape, as opposed to the front and rear of two neighboring houses.

In building the residence, Penny testified that initially they accessed the site solely by driving across their own field in a path that runs parallel to the road. Then, after the house was under roof, Penny's husband discussed building a driveway which would also run along the road. Penny testified that Joe Wright, the prior owner of Hutchinson's property, decried the plan as senseless and stated that the Justices could use his road. The Justices cut the barbwire fence that separated their residence from the road and, thereafter, and without incident, exclusively used the road for access.

Penny further testified that she provided maintenance to the road prior to Hutchinson's 2006 purchase of the land, including graveling the road approximately 500 feet from Blueberry Lane to her house. Melinda Wright's testimony corroborated Penny's regarding the permission to use the road and the arrangement as to maintenance. Hutchinson confirmed that after he took ownership of his property, he alone provided maintenance to the road and, at his own expense, had it resurfaced in 2016.

Eventually, Penny, now the sole owner of the property, listed it for sale. In the sales disclosures, Penny noted that the road was shared and indicated that it was unknown if there were easements. Murawa toured the property, using the road to access the house. Penny believes that during Murawa's tour, she told him that she did not own the road and only used it by permission. Murawa denied this but testified that Penny did inform him at some point that Hutchinson was supposed to provide her a legal easement when he first purchased his property. Murawa further testified that the realtor, after examining the Property Value Administrator's (PVA) map of the area and reviewing the deed, determined Murawa owned the road. Though the realtor acknowledged reviewing the deed and procuring the PVA map, the realtor denied advising Murawa that he owned the road.

In February 2017, Murawa purchased the property, and soon thereafter, he and Hutchinson discussed the road wherein they both asserted ownership. Hutchinson testified that, after confronting Murawa with the deeds, Murawa agreed that Hutchinson was the rightful owner of the road. Hutchinson then told Murawa that he had permission to use the road, but if Murawa made trouble, he would have to build his own. Murawa denied he ever agreed to Hutchinson's ownership but acknowledged that he did not further press the issue. It is undisputed that Murawa and his family used the road without interruption or incident until October 2019 when Hutchinson barred access to the road with a gate and installed fencing along the boundary.

In response, Murawa brought the underlying action seeking to restrain Hutchinson from denying him access to the road. A bench trial was held wherein Murawa pursued a theory of easement by prescription. After the close of proof, Murawa asserted an additional theory of easement by estoppel. After citing the applicable law, the trial court found that Penny Justice relied upon permission to use the road when she built the residence as it was unfathomable that a person would otherwise select a site 500 feet from the county road without building their own access, orient the home toward the road, and contribute to its maintenance. Additionally, the court found that Murawa "relied on the facts as he understood

them to purchase the property." Thus, the trial court agreed an easement had been created by estoppel. This appeal timely followed.

## STANDARD OF REVIEW

The trial court's factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[1] 52.01; *see also A & A Mechanical, Inc. v. Thermal Equipment Sales, Inc.*, 998 S.W.2d 505, 509 (Ky. App. 1999). A finding is not clearly erroneous if it is supported by substantial evidence. *Owen-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). We review questions of law and the trial court's application of the law to the facts *de novo*. *A & A*, 998 S.W.2d at 509; *Weinberg v. Gharai*, 338 S.W.3d 307, 312 (Ky. App. 2011).

## ANALYSIS

An easement is the right to use the land of another for a specified purpose. *Majestic Oaks Homeowners Association, Inc. v. Majestic Oaks Farms, Inc.*, 530 S.W.3d 435, 438 (Ky. 2017). It may be created by an express written grant or established through implication, prescription or, relevantly, estoppel. *Gosney v. Glenn*, 163 S.W.3d 894, 899 (Ky. App. 2005). In general, easements are

---

[1] Kentucky Rules of Civil Procedure.

-6-

not favored, and consequently, the asserting party bears a heavy burden in establishing the necessary requisites. *Id.*

Deriving from the general principles of equitable estoppel, an easement by estoppel prevents a party who has previously permitted the use of their property from subsequently denying that right where, through the party's conduct, the user justifiably relied on continuation of that right and acted to their own detriment. *Id.* A party asserting an easement by estoppel must prove: (1) the licensor engaged in conduct which amounts to a false representation or a concealment of material facts; (2) which the licensor intended or expected the licensee to rely on; (3) the licensee did in fact believe and rely on the representation; and (4) as a result, the licensee changed their position to their own prejudice, generally through the erection of valuable improvements. *Id.*; *Jones v. Sparks*, 297 S.W.3d 73, 77 (Ky. App. 2009).

On appeal, Hutchinson first argues that Murawa did not meet his burden to establish an easement by estoppel. In support, Hutchinson asserts that since he has always asserted ownership of the road and its use was at his discretion, there is no evidence that he made false representations, concealed materials facts, or otherwise created a justifiable reliance on continued access. Murawa disagrees, arguing that the orientation of the home, the lack of a seller's disclosure about the legal status of the road, a clear title examination, continued

use of the road, and inaction by Stapleton, whom he asserts is the road's true owner, and by Hutchinson, created a justifiable reliance of continued access and caused him to buy the property at a price he may not have paid otherwise. Murawa argues the facts in *Akers v. Moore*, 309 S.W.2d 758 (Ky. 1958), are analogous and support the trial court's judgment.

We agree with Hutchinson that the evidence does not establish that Murawa acquired an easement by estoppel in his own right. Contrary to the findings of the court and the arguments of Murawa, the representations made to Murawa by the realtor, Penny, or the title examination company, as well as the inaction of Stapleton, are irrelevant as an easement by estoppel is "an equitable principle invoked against a party[,]" which said individuals are not. *Loid v. Kell*, 844 S.W.2d 428, 430 (Ky. App. 1992). Similarly, Murawa's observations regarding the home and its proximity to the road have no bearing on the criteria for an easement by estoppel. Likewise, Hutchinson's failure to prevent Murawa's use is insufficient to create an easement because estoppel requires fraud or concealment, not mere acquiescence, which induces the licensee to act to their detriment. *Embry v. Turner*, 185 S.W.3d 209, 216 (Ky. App. 2006) (quoting *Thomas v. Holmes*, 306 Ky. 632, 637, 208 S.W.2d 969, 972 (1948)).

Regarding Hutchinson's affirmative conduct, both parties testified that there was an early dispute vis-à-vis the road and that Hutchinson asserted

ownership and control thereof. This is consistent with Hutchinson's current contention and, despite the flaw in Hutchinson's deed, was not a false representation. As for Murawa's expectation of continued use, Hutchinson testified he told Murawa that he would have to build his own driveway if Murawa continued to "mess with him." This conditional permission can hardly have been intended to create an expectation of unfettered access. Additionally, there is no evidence Murawa detrimentally changed his position. Murawa had already closed on the property prior to any alleged actions by Hutchinson; therefore, the purchase could not have been in reliance thereof. Finally, unlike the promisees in *Akers* who expended a significant sum of $200 in 1958 to improve the road at issue, Murawa's unauthorized mowing of the area and adding some stones to holes cannot be classified as a valuable improvement. 309 S.W.2d at 759.

Our review does not end here, however, as the court found that the criteria for an easement by estoppel had been satisfied by Penny's use of the road, which Murawa asserts is still in effect. Hutchinson takes umbrage with the court's findings on this point, noting it was contrary to Penny's testimony. Further, citing *Cole v. Gilvin*, 59 S.W.3d 468 (Ky App. 2001), and *Loid*, 844 S.W.2d 428, Hutchinson contends that Murawa could not acquire an easement through purchase as an easement by estoppel does not run with the land. In response, Murawa asserts the court was free to discredit Penny's testimony, and while conceding the

general rule that easements by estoppel do not run with the land, he argues the exception of equity applies.

As an initial matter, we must determine if Penny could have established an easement by estoppel. The parties disagree on the identity of the licensor. Murawa argues that, due to the defect in the deeds whereby the road was not included in any conveyance since 1968, Stapleton was the true owner of the property and her acquiescence in Penny's use of the road satisfies the first two requirements for an easement by estoppel. Accepting *arguendo* Murawa's contention that Stapleton's conduct was controlling, we disagree it would support an easement by estoppel where the record contains no evidence Stapleton had notice of any of the relevant events and, as noted above, mere acquiescence is not enough. *Embry*, 185 S.W.3d at 216.

Hutchinson, as well as the trial court, focused on his and Joe Wright's conduct. Joe Wright, Hutchinson's predecessor in interest, did give Penny permission to use the road and Penny testified there was discussion about including this right in any subsequent deed, though this was never done. This satisfies the first three requirements. Therefore, if Penny prejudicially changed her position in reliance of continued use, an easement by estoppel would exist as it relates to Joe and herself.

On this factor, the trial court found that Penny relied on permission to use the road in choosing to build a residence. We conclude that this finding is clearly erroneous as it is not supported by substantial evidence. The only evidence adduced on this issue was from Penny herself where she testified the residence was under roof prior to her use of the road or permission being granted (*i.e.*, the permission could not have induced her to build the residence in its present location). While the trial court found this to be unfathomable, there was simply no evidence to find otherwise. Further, while Penny's decision to eschew constructing her own driveway could be said to be in reliance on continued access to the road, this non-action does not constitute a change in position, much less a prejudicial change.

At best, the evidence supports that Penny graveled half the road, from the county road to her turnoff, on at least one occasion and performed general maintenance of an unknown character prior to 2006. Here, unlike in *Holbrook v. Taylor*, 532 S.W.2d 763 (Ky. 1976) (where the licensee built a $25,000 house and improved the disputed road at a cost of $100) and *Akers*, 309 S.W.2d 758 (where the licensee spent $200 making the disputed road passable), there is no evidence of Penny's expenditures making it difficult to ascertain if, and to what extent, she was prejudiced. Again, easements are not favored, and it is the claimant's burden to demonstrate adequate evidence. *Gosney*, 163 S.W.3d at 899.

Assuming this limited evidence could support a finding of an easement by estoppel between Penny and Wright, there still remains the question of whether equity would require that it remain in force to preclude Hutchinson from revoking Murawa's access to the road. In considering this issue, we are mindful that even where an easement by estoppel is established, it is not without limitation. An easement by estoppel "is irrevocable to the extent necessary to prevent the licensee from being unfairly deprived of the fruits of [their] expenditures[.]" *Bob's Ready to Wear, Inc. v. Weaver*, 569 S.W.2d 715, 720 (Ky. App. 1978) (quoting RESTATEMENT OF THE LAW OF PROPERTY § 519, Comment G. (1944)).

The trial court did not render specific findings on this point. Murawa asserts that equity requires the easement remain in force, in exception to the general rule against running easements with the land, and relies on *PSP North, LLC v. Attyboys, LLC*, 391 S.W.3d 396 (Ky. App. 2013). In *PSP*, a concrete access ramp, costing $23,500, was built on and for the benefit of the licensee's property with over half of the ramp encroaching upon the licensor's property. Thereafter, the licensee's property was sold to Attyboys who was permitted to use the ramp and, with the licensor's knowledge, incurred substantial cost in designing the layout of their building to utilize the ramp. The licensor then sold their property to PSP who sought to deny Attyboys access to the ramp. Affirming the

circuit court's finding of an easement by estoppel, this Court held that PSP, "having had notice of the irrevocable license held by Attyboys prior to purchasing the property, was barred by equitable principles from revoking Attyboys' license." *Id.* at 399.

*PSP* is distinguishable from the case at bar. Attyboys, the party asserting the existence of the easement, had established on their own merits an irrevocable license to use the ramp during the original licensor's ownership, which is not the case herein. Additionally, the improvements at issue in *PSP* were of a far more obvious and permanent nature, a concrete ramp openly encroaching upon the licensor's land and the layout of the licensee's building compared herein to gravel laid on the licensor's property at least a decade prior to Murawa's ownership and 12 years prior to the underlying action. Additionally, *PSP* involved a significant outlay by the licensee–$23,500–compared to laying gravel at an unknown cost. We find these distinctions to be meaningful.

Additionally, further weighing against the equity of continuing an easement, Murawa had ample notice that access could be an issue. The seller's disclosure indicated the road was shared and that it was unknown whether there was an easement. Murawa admitted there was a discussion with Penny about an easement being previously contemplated, but he did not verify if it had been effectuated. Murawa was concerned enough that the realtor, despite testifying she

-13-

was not qualified to render an opinion on ownership issues, pulled the deed and a map from the PVA.  However, Murawa failed to obtain a survey, consult an expert, or verify the status of the road with Hutchinson.  In short, despite notice of potential issues, Murawa took no proactive action, and equity does not require the requested remedy.

## CONCLUSION

Therefore, and for the foregoing reasons, the judgment of the Bath Circuit Court concluding that Murawa had an easement by estoppel is REVERSED, and this matter is REMANED for entry of a judgment in favor of Hutchinson.

McNEILL, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Leah Hawkins
Mt. Sterling, Kentucky

BRIEF FOR APPELLEE:

Angela A. Patrick
Mt. Sterling, Kentucky